No. 20-17229

_____

# UNITED STATES COURTS OF APPEALS
# FOR THE NINTH CIRCUIT

_____

STEVE WILSON BRIGGS

Appellant/Petitioner

vs.

JAMES CAMERON, NEWS CORPORATION, TWENTIETH CENTURY FOX
FILM CORPORATION, GOOGLE LLC, ZERO GRAVITY MANAGEMENT
LLC, INTERNET ARCHIVE, LIGHTSTORM ENTERTAINMENT INC,
MICHAEL PIERCE, MARK WILLIAMS, ROBERT MARK KAMEN

Appellees/Respondents

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
Case No. CV 20-1596-VC,
Hon. Judge Vince Chhabria

_____

# REPLY BRIEF OF APPELLANT STEVE WILSON BRIGGS

## (Replying To All Defendants' Answers)

_____

Steve Wilson Briggs
4322 Chico Ave,
Santa Rosa, CA 95407
(510) 200 3763
snc.steve@gmail.com

*Appellant, In Propria Persona*

## **TABLE OF CONTENTS**

INTRODUCTION: …………………….…..…………………….…………1


**ARGUMENT:**

  I.   THE DISTRICT IGNORED PLAINTIFF'S REQUEST
      FOR A RULE 60 REVERSAL OF *BRIGGS V BLOMKAMP*,
      PER *SKIDMORE V LED ZEPPELIN*; & OTHER PROBLEMS………..….. 2

  II.  CHIEF JUDGE SIDNEY R THOMAS MAY BE ENGAGED
      WITH THE DEFENDANTS, & APPEARS TO HAVE FALSIFIED
      ARIZONA BUSINESS FILINGS, TO HIDE  HIS TIES TO THE
      DEFS……………………………………………………….…………12

  III.  THE DISTRICT MADE DANGEROUSAND OBVIOUS
      MISTAKES IN BRIGGS v CAMERON …………….…..…………………..19

         History Of Improper Relations Between
         The 9th & Hollywood …....……………………………..………….23


**CONCLUSION**………………..………………………………….………. 25

      Certificate of Compliance……………………………………………... 26

      Certificate of Compliance……………………………………………... 26

i

# TABLE OF AUTHORITIES

**Cases**

*Art Attacks Ink v MGA Entertainment Inc* ...……………………………...3, 9, 10

*Baxter v. MCA, Inc*., 812 F.2d 421, 423, 424 n. 2 (9th Cir.1987) ………………… 6

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (2014), affirmed as
*Briggs v. Sony Pictures Entertainment, Inc*., 714 F. App'x 712
(9th Cir. 2018) ……………………………………….…1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12

*Cavalier v. Random House, Inc*., 297 F.3d 815, 822 (9th Cir. 2002) ……………10

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc*. (1991) …………… 10

*Knitwaves, Inc. v. Lollytogs Ltd*., 71 F.3d 996, 1003 (2d Cir.1995) …………….. 10

*Sid & Marty Kroft Tele. v. Mcdonald's Corp* …………………………………….. 6

*Skidmore v Led Zeppelin* .…………………………………1, 2, 3, 4, 6, 7, 8, 9, 10, 25

*L.A. Printex Indus., Inc. v. Aeropostale, Inc*. (9th Cir. 2012) ……………... 3, 9, 10

*L.A. Printex Indus. Inc. v. Macy's Retail Holdings, Inc*. ………………………... 11

*Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) ………………………….... 9

*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir.2002) …………………….….... 10

*Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ……………………………... 10

*Shaw v. Lindheim*, 919 F.2d 1353, 1361–62 (9th Cir. 1990) ………..……….. 4, 6

*Smith*, 84 F.3d at 1218 ………………………………………………………… 6

*Three Boys Music*, 212 F.3d ………………………….………………….. 4, 5, 6, 11

ii

**Periodicals**

New York Post ……………………………………………………………………... 21

New York Times ……………………………………………………………… 22

L.A. Times …………………………………………………………………… 23

**Other**

1948 Genocide Convention …………………………………………………… 20, 21

Arizona Corporation Commission …………………………………… 14, 17, 18

## **INTRODUCTION**

The Appellant/Plaintiff, Steve Wilson Briggs, proceeding in propria persona, believes each of the nine (9) Arguments raised in his Opening Brief, individually, is sufficient to reverse, and cannot be overcome by the Appellee/Defendants' insufficient Answers. But the Plaintiff has submitted this Reply, to attend any doubt raised by the Defendants' Answer, AND toward these goals:

1. To make this Court's aware that: **(A)** there may be unlawful business relationships between **Chief Judge Sidney R. Thomas**[1] and the Defendants; **(B)** there is evidence that Chief Judge Thomas may have been a participant in the Defendants' scheme to infringe the Plaintiff's intellectual property; **(C)** Chief Judge Thomas may have falsified Arizona business documents, to conceal his role in the theft of the Plaintiff's intellectual property.

2. To address the need for an immediate and automatic reversal of ***Briggs v Blomkamp***, per *Skidmore v Led Zeppelin*, which expressly "**overrules**" **ALL prior cases** that relied on the **inverse ratio rule**.

3. Though duly advised by the Plaintiff, Judge Chhabria's Order grossly and inexcusably ignored central directives of *Skidmore v Led Zeppelin*.

4. To address extreme anomalies in the Ninth's procedure, related to this case, indicating the Ninth has acted to subvert justice, in favor of the Defendants.

---

[1]  **Chief Judge Sidney R. Thomas**, personally, presided over both, the Plaintiff's appeal of Briggs v Blomkamp, and its petition for rehearing.

**ARGUMENT #1:** THE DISTRICT IGNORED PLAINTIFF'S REQUEST
FOR A RULE 60 REVERSAL OF ***BRIGGS V BLOMKAMP***,
PER *SKIDMORE V LED ZEPPELIN*; & OTHER PROBLEMS

Although this matter, **Briggs v Cameron**, is entirely separate and distinct from *Briggs v Blomkamp* (district 2013; appeal 2018), *Briggs v Blomkamp* (**BvB**) centrally factors into this case because:

1. On pp 121 &122 of the Briggs v Cameron Complaint, the Plaintiff asked the Court to remand or reverse *Briggs v Blomkamp*, upon new information that:

    **a.** There are new BvB <u>access</u> facts and evidence—a basis to remand.

    **b.** The BvB defendants (**defs**) produced numerous demonstrably fraudulent and backdated websites, documents and Internet Archive crawls, to support their BvB infringement scheme.

    **c.** Two years after BvB moved to appeals, the defs' expert witness, Jeff Rovin, confessed on FOX News that he was a ***fixer*** for President Bill Clinton, during Clinton's Presidency. Rovin explained that, as a fixer, he wrote **false "smear"** stories against Clinton detractors.

    (NOTE: In 2014, Plaintiff moved the BvB court to exclude Rovin's Report, citing 10-12 unconscionably false statements. Motion denied.)

2. The 9th's ***Skidmore v Led Zeppelin*** Opinion reverses the underpinnings of *Briggs v Blomkamp*, and expressly <u>overrules</u> ALL such prior matters.

3. The District Order centrally cites *Briggs v Blomkamp*.

2

Although duly informed, the District ignored the Plaintiff's calls for a Rule 60 reversal of BvB (see Compl, pp 120, 121), required under *Skidmore v Led Zeppelin*, which **reverses** and <u>**overrules all prior cases**</u> using the inverse ratio rule (which was used in *Briggs v Blomkamp*). The Plaintiff informed the district of this, numerous times, including on page 24 of his Opposition to 20th Century Fox's (**20CFOX**) and James Cameron's Motion to Dismiss (**MTD**):

> The Defs' MTD opened by mentioning Briggs v Blomkamp (which Plaintiff views as introducing matters outside the pleadings); thus, it seems fitting to close on that subject. The Plaintiff lost Briggs v Blomkamp in 2014, when the District <u>1. improperly used Inverse Ratio;</u> 2. failed to assess the Plaintiff's selection and arrangement of unprotectable elements; 3. allowed the testimony of a self-described fixer; and 4. accepted the defs supplanted Art Attacks Ink citation over Plaintiff's citation of the prevailing LA Printex. The 9th let the District order stand. Thus, in his Writ to the US Supreme Court, the Plaintiff asked:
>
> 1. If Amazon.com has 300 million active users, can someone argue that a book or film posted there is not widely disseminated (as Amazon is just a website)?
> 2. If so, does that mean artists who have exclusive contracts with companies like iTunes, TIDAL and Netflix cannot claim widely disseminated status to protect their copyrighted work from infringement?
> 3. Is the widely disseminated designation equitably conferred in the Ninth, or reserved for celebrities?
>
> But thankfully, Skidmore v Led Zeppelin answered Plaintiff's questions. Loudly:
>
> "Given the ubiquity of ways to access media online... access may be established by a trivial showing that the work is available on demand."
>
> "We join the majority of our sister circuits that have considered the inverse ratio rule and have correctly chosen to excise it from copyright analysis."
>
> "To be sure, a copyright plaintiff may argue "infringement . . . based on original selection and arrangement of unprotected elements."

3

"But nothing in copyright law suggests that a work deserves stronger legal protection simply because it is more popular or owned by better-funded rights holders."

### Skidmore Demands The Reversal of BvB

March 9, 2020, five days after the Plaintiff filed his Briggs v Cameron Complaint, the Ninth released its *Skidmore v Led Zeppelin* opinion, which emphatically overruled and reversed the "inverse ratio rule," one of primary **access** and **substantial similarity** assessment "strategies"[2] used in the unsound 2014 *Briggs v Blomkamp* district order (improperly affirmed by the Ninth, in 2018).

But the Ninth did not stop there. On page 26 of the *Skidmore* opinion, the Ninth it expressly overruled all prior cases relying on inverse ratio; stating:

> "Because the **inverse ratio rule**, <u>which is not part of the copyright statute</u>, **defies logic**, and creates uncertainty for the courts and the parties, we take this opportunity to **abrogate the rule** in the Ninth Circuit **and overrule our prior cases to the contrary**. See e.g., **Three Boys Music**, **212 F.3d at 485**–86; Shaw v. Lindheim, 919 F.2d 1353, 1361–62 (9th Cir. 1990)."

Again, the Ninth not only reversed the inverse ratio rule, but the Court also clearly stated that it "overrules our prior cases to the contrary."

Plaintiff asked for such a reversal on page 120, 121 of the Briggs v Cameron Complaint, and on page 24 of 20CFOX's MTD. Ignoring these requests was a dereliction of duty on the part of the Honorable Judge Chhabria.

---

[2] The Plaintiff refers to the inverse ratio rule as an infringement assessment "strategy" because it was never codified into law, and the 9th exclusively used this unorthodox tool against unrepresented and non-corporate plaintiffs.

How do we know that the Honorable Judge Hamilton used inverse ratio in her *Briggs v Blomkamp* (**BvB**) dismissal? Because Judge Hamilton's first, central and only quoted citation in the "Infringement" section of her BvB dismissal order is the very *Three Boys Music* 212 F.3d at 485 citation that the 9th cited in the first and second paragraphs of "The Inverse Ratio Rule" section of its *Skidmore* opinion (p 26). In fact, Judge Hamilton quoted from the very paragraph that introduced inverse ratio (see pp 15, 16 of judge Hamilton's 2014 BvB order):

> "2. Infringement
> Had plaintiff provided some evidence of access (even circumstantial), he could potentially show infringement by demonstrating that the two works are "substantially similar." Because plaintiff lacks any evidence of access, however, he can establish copyright infringement only by showing "striking similarity." See **Three Boys Music, 212 F.3d at 485** ("in the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the [works] were 'strikingly similar'")"

Thus, per inverse ratio, Judge Hamilton sets an impossibly high bar for infringement,[3] because the court did not accept the Plaintiff's access theory (more on this later). Judge Hamilton's citation omitted the first half of the *Three Boys* passage, and omitted the connective adverb "Furthermore" from her quoted sentence. The full *Three Boys Music* inverse ratio paragraph reads:

---

[3] In the end, judge Hamilton's order was inexcusable. The contested works both involved poor heroes who must somehow immigrate to a giant orbiting satellite city for the super-rich for medical aid for their daughter (or ex girlfriend's daughter), both heroes suffered from rare, extreme headaches, among a hundred other similarities.

5

B. Substantial Similarity

[8, 9] Under our case law, substantial similarity is inextricably linked to the issue of access. In what is known as the **"inverse ratio rule,"** we "require a lower standard of proof of substantial similarity when a high degree of access is shown." Smith, 84 F.3d at 1218 (citing Shaw v. Lindheim, 919 F.2d 1353, 1361–62 (9th Cir.1990); Krofft, 562 F.2d at 1172). Furthermore, in the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were "strikingly similar." See Smith, 84 F.3d at 1220; Baxter v. MCA, Inc., 812 F.2d 421, 423, 424 n. 2 (9th Cir.1987).

Because Judge Hamilton selected *Three Boys Music*, 212 F.3d at 485, which cites the inverse ratio rule, and is the first paragraph under the heading "Substantial Similarity," the Plaintiff interpreted this citation as an inverse ratio *substantial similarity* ruling. However, it can also be viewed as an 'access' ruling. In either case, there is no conflict, because *Skidmore* also expressly reverses the inverse ratio rule for any *access* application, as explained in the next section.

<u>*Skidmore* Reverses "Access" Under Inverse Ratio</u>

On page 32 of *Skidmore v Led Zeppelin*, the Ninth emphatically reverses any and all *access* rulings made under the inverse ratio rule, stating:

> To the extent **"access"** still has meaning, the inverse ratio rule unfairly advantages those whose work is most accessible by lowering the standard of proof for similarity. Thus the rule benefits those with highly popular works, like The Office, which are also highly accessible. But nothing in copyright law suggests that a work deserves stronger legal protection simply because it is more popular or owned by better-funded rights holders.
>
> Finally, the inverse ratio rule improperly dictates how the jury should reach its decision. The burden of proof in a civil case is preponderance of the evidence. Yet this judgemade rule could fittingly be called the "inverse burden rule."

Because the district court used the inverse ratio rule in BvB, per *Skidmore v Led Zeppelin*, *Briggs v Blomkamp* must be reversed.

## Much Larger Briggs v Blomkamp Problems

Although the district usage of the inverse ratio rule in BvB is a glaring failure, which requires reversal, the 2014 *Briggs v Blomkamp* district order had even larger problems—and at least one of these larger problems was ALSO reversed by *Skidmore v Led Zeppelin*: Access.

<u>*Skidmore v Led Zeppelin*, AGAIN, Reverses</u>
<u>The District's BvB Access Ruling/Guideline</u>

*Skidmore v Led Zeppelin* reverses any *access* rulings made under the inverse ratio rule, AND it reverses the narrow Hollywood *access* "cutout" underpinning Judge Hamilton's BvB dismissal order.

Judge Hamilton improperly opined, in her 2014 *Briggs v Blomkamp* order, that the Plaintiff provided no evidence of access:

> "Had plaintiff provided some evidence of access (even circumstantial), he could potentially show infringement by demonstrating that the two works are "substantially similar." Because plaintiff lacks any evidence of access.."

But, in fact, in BvB, the Plaintiff's complaint and attachments showed that from 2006 to 2014 he was a member of Kevin Spacey's screenwriter and filmmaker online social network, Trigger Street (TriggerStreet.com), the largest filmmaker or screenwriter social network in the world, where he posted his

screenplay, for all 300,000 Trigger Street members to see, from 2006 to 2007. Trigger Street is where the Plaintiff alleged that the BvB defendants accessed his work —a sound and reasonable access theory that was discussed on countless news and legal sources, and even Universities, in 2013 and 2014, when the international press released news of *Briggs v Blomkamp*.

At the time of Judge Hamilton's BvB order, the 9th routinely <u>accepted</u> such access-by-internet claims, in computer and internet IP claims. But for roughly 15 years, the 9th refused to consider access-by-internet claims against the film industry. For the film industry, the 9th required a virtually impossible access checklist, as explained on page 12 of the BvB district order:

> "...access may be shown by a **chain of events** connecting plaintiff's work and the defendant's opportunity to view/hear/copy the work, such as dealings through a third party that had access to the plaintiff's work and with whom both the plaintiff and the defendant were dealing... Reasonable access requires more than a "bare possibility," and **<u>"may not be inferred through mere speculation or conjecture.</u>"**

Since "speculation" was ruled out, the Ninth essentially required insider knowledge, or photographic evidence for plaintiff's suing film industry defendants.

Judge Hamilton, by reflection or persuasion, adhered to this inconsistency.

But the *Skidmore* ruling reverses these unreasonable access standards. Per *Skidmore*, the Ninth now accepts a simply showing that a work was **available online, on demand** —exactly as the Plaintiff posited in *Briggs v Blomkamp*.

On page 31 of *Skidmore v Led Zeppelin* the Ninth wrote:

> As a practical matter, the concept of "access" is increasingly diluted in our digitally interconnected world. Access is often proved by the wide dissemination of the copyrighted work. See Loomis v. Cornish, 836 F.3d 991, 995 (9th Cir. 2016). Given the ubiquity of ways to access media online, from YouTube to subscription services like Netflix and Spotify, access may be established by a trivial showing that the work is available on demand.

Thus, per *Skidmore*, *Briggs v Blomkamp* (**BvB**) should be reversed.

<u>In BvB the District Cited Vacated Law, Over Plaintiff's
Citation Of Prevailing Law, And Failed To Assess Plaintiff's
Selection & Arrangement of Unprotectable Elements</u>

In BvB the Plaintiff's MFSJ informed the district of the prevailing L.A. *Printex Industries. Inc. v Aeropostale, Inc*., (9th Cir 2012), "widespread" access theory. However the district's order omitted any mention of this prevailing law, and cited *Art Attacks Ink v MGA Entertainment Inc*. (which was reversed by *L.A. Printex v Aeropostale*). *L.A. Printex* set the standard for (1) *widespread dissemination* theory of *access*, and (2) *substantial similarity* theory based on *selection and arrangement of unprotectable elements*.

The BvB district order (1) failed to give the Plaintiff widespread access, per *L.A. Printex*—this resulted in an improper access ruling; (2) failed to assess the Plaintiff's selection and arrangement of unprotectable elements, per *L.A. Printex*—this resulted in an improper substantial similarity ruling.

Without belaboring these points, the Plaintiff reminds this court that

*Skidmore v Led Zeppelin* twice cites *L.A. Printex v Aeropostale*, but ignores *Art Attacks Ink*. In Skidmore v Led Zeppelin (page 45) the Court cites L.A. Printex:

> "Put another way, what a selection and arrangement copyright protects is the particular way in which the artistic elements form a coherent pattern, synthesis, or design. See **L.A. Printex Indus., Inc. v. Aeropostale, Inc**., 676 F.3d 841, 850–51 (9th Cir. 2012) ("original selection, coordination, and arrangement" that result in the overall "design" are protectable.)

In BvB, although the Plaintiff's MFSJ advised the court of the protectability of unprotectable elements, and advised the court of *L.A. Printex v Aeropostale*. The district improperly ignored this guidance. *L.A. Printex v Aeropostale* states:

> "**Original selection, coordination, and arrangement of unprotectible elements may be protectible expression**. See Feist Publ'ns, 499 U.S. at 362; Cavalier, 297 F.3d at 826–27; Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir.2002) ("Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection."). For this reason, the Second Circuit has rejected the argument that, "in comparing [fabric] designs for copyright infringement," a court must "dissect them into their separate components, and compare only those elements which are in themselves copyrightable." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1003 (2d Cir.1995) ("[I]f we took this argument to its logical conclusion, we might have to decide that there can be no originality in a painting because all colors of paint have been used somewhere in the past." (internal quotation marks omitted))...
>
> "...The idea of a oral pattern depicting bouquets and branches is **not** protectible, and C30020 has elements that are **not** protectible, for example the combination of open owers and closed buds in a single bouquet or the green color of stems and leaves. See Satava v. Lowry, 323 F.3d 805, 811 (9th Cir.2003). **However, L.A. Printex's original selection, coordination, and arrangement of such elements is protectible**. See Feist Publ'ns, 499 U.S. at 362..."

The Ninth's *Briggs v Blomkamp* ruling should be reversed or remanded.

<u>In BvB The District Court Omitted & Misstated</u>
<u>All Of The Plaintiff's Central Claims</u>

In *Briggs v Blomkamp* the district either wholly omitted or grossly misstated ALL of the Plaintiff's central claims. Most of the altered citations actually paraphrased or quoted the defendants inaccurate "interpretation" of the Plaintiff's claims. The claims that Judge Hamilton did not omit, but grossly altered, were then compared to the defendants' work. This is so improper that it must be construed as an effort to abet the defendants' theft of the Plaintiff's intellectual property.

The Ninth's *Briggs v Blomkamp* opinion must be reversed.

<u>In Briggs v Blomkamp The District Made</u>
<u>A Non-Existent Central Case Citation</u>

On page 12 of the BVB order, Judge Hamilton wrote:

> Specifically, plaintiff must provide direct evidence of copying, or circumstantial evidence **"through a combination of access to the copyrighted work and substantial similarity between the copyrighted work and the accused product."** Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000).

This citation does not exist in 212 Federal Reporter. Period. The Plaintiff searched online and found that this false citation was taken from a poorly researched 2011 <u>district court</u> summary judgment denial, in the matter or *<u>L.A. Printex Indus. Inc. v. **Macy's Retail Holdings**, Inc.</u>*

**If a court sustains a motion to dismiss, it must do so upon valid law.**

The Ninth's *Briggs v Blomkamp* opinion should be reversed.

11

**ARGUMENT 2:** CHIEF JUDGE SIDNEY R THOMAS MAY BE ENGAGED WITH THE DEFENDANTS, & APPEARS TO HAVE FALSIFIED ARIZONA BUSINESS FILINGS, TO HIDE HIS TIES TO THE DEFS.

Perplexed by the Ninth's plainly improper rulings, the Plaintiff decided to use a few common online business resources to see if there were any improper business ties between any Ninth Circuit judges and the Defendants.

The Plaintiff started this research with the Honorable Chief Judge Sidney R. Thomas, who personally presided over both, the Plaintiff's *Briggs v Blomkamp* Appeal (February 2018), and the BvB petition-for-rehearing (April 6, 2018).

For an entire circuit court to be corrupted by an unlawful shell company money laundering scheme, it only takes one judge—to receive money from corrupt parties or corporations, to distribute to any other corrupt judges.

While researching the Briggs v Cameron Defs' businesses, the Plaintiff discovered that the Defs created most of their businesses in 2006, after the January 2006 version of the Plaintiff's screenplay was finished and accessed. The Defs also created many businesses in 2007, after the **Dec 2006** rewrite (featuring "aggregated data," the Earth/universe simulator, and the soul scanner) was complete.

[NOTE: on the following pages, the web addresses of all described documents are included. There is also a clickable link after each document, in the capitalized, bold and underlined word "**HERE**". If you are reading this Reply online, just click the link, and the page should direct to the proper address.]

I entered "Sidney R Thomas" into the OpenCorporates.com online app, and found a "Sidney R. Thomas" *manager* and/or *agent* on 2 Arizona (**AZ**) businesses: Thomas-Hume Holdings, LLC, and Trinity Property Development, LLC.

Amazingly, Thomas-Hume Holdings, LLC, was formed September 2006, just 6 months after Zero Gravity Management (Def) accessed Plaintiff's work. (See https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=L13093490  ; or see **HERE**.)

More amazingly, the second company, Trinity Property Development, LLC, was formed on Jan 11, 2007, a few weeks after Plaintiff introduced *data aggregation*, and **scanning** bodies/brains/souls into digitized reproductions. (See https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=L13367664  ; or see **HERE**.) This is interesting because the second page of Trinity Property's Articles names 3 partners: Sidney Thomas, Randy White, and **Chris Jaska**. Chris Jaska is an engineer for Spectra-Physics, a company that makes bio-imaging lasers. See Spectra-Physics' bio-imaging lasers, at https://www.spectra-physics.com/fs-bioimaging-lasers, or see **HERE**. See Chris Jaska at https://www.linkedin.com/in/christopher-jaska-53205311 , or see **HERE**; and at https://bearsofficialsstore.com/company/spectra_physics , or see **HERE** (scroll down, you'll see Jaska has been with Spectra-Physics since 2001).

Bio-imaging lasers take extremely detailed 3D images of people's bodies (and

brains). You would use these lasers to make 3D cyber copies of a body or a brain. Spectra-Physics' YouTube page shows its lasers doing brain and body scans: https://www.youtube.com/watch?v=MaGhrF7AotA , or see **HERE**. 18 seconds into the video you'll see footage of a scan of a mouse striatum (center of the brain).

At the Arizona Corporation Commission (**ACC**) website, the Plaintiff noticed that some of the listings for *Sidney R. Thomas* did not have the "R" in the name, and some added the suffix "III" (Sidney R Thomas III). Online, the only person the Plaintiff found named "Sidney R Thomas III" was a felon, incarcerated in 2008.

<u>Evidence of Business Fraud & Falsification (#1)</u>

On the ACC's website, Thomas-Hume Holdings LLC's <u>Article of Organization</u> (**AoO**) link led to this document at: https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01702636 , or see **HERE**.

Thomas-Hume Holdings LLC's "miscellaneous" (**misc**) link led to this doc: https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01737831 , or see **HERE**.

Trinity Property Development, LLC's AoO link led to this document: https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01832888 , or see **HERE**.

Trinity Property Development, LLC's misc link led to this document:

https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01864198 ,
or see **HERE**.

For rapid verification, you will find a combined PDF of these 4 filings at
https://6cf84077-fe04-4d44-a00a-efbcc6967552.filesusr.com/ugd/9b9c25_344adf4
1071e4a88a050cc1ad5203c09.pdf , or see **HERE**.

Look at the upper left corners of the Articles of Organization for both
Thomas-Hume Holdings, LLC and Trinity Property Development, LLC. You will
see short dash lines below the ACC's barcode, as if someone stuck a barcode
sticker on the document, or cut out a barcode in a photo editor and added the
barcode to the document, with a photo editor. That's because someone did.

The ACC uses a neat and efficient stamping system that leaves a very clean
and distinct barcode, with no lines or smudges. Consider the following 11
documents that were filed at the same time as the fake documents.

1. See CHC, LLC's AoO from September 1, 2006; See
   https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01730
   250 , or see **HERE**.

2. See GLOBAL BENEFITS CONSULTANTS, LLC's AoO, Jan 10, 2007; see
   https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01853
   236 , or see **HERE**.

3. See MOUNTAIN PARK RENTALS, LLC's AoO from Jan 10, 2007; see

https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01957723 , or see **HERE**.

4. See Strength-n-length Pilates, LLC's AoO from Jan 10, 2007: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01853243 , or see **HERE**.

5. See FOLEY PATENT CONSULTING, LLC's AoO from Jan 10, 2007: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01853244 , or see **HERE**.

6. See UV INDUSTRIES LLC's AoO from February 12, 2007: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01875128 , or see **HERE**.

7. See BUTTERFIELD TRAIL, LLC's AoO from January 10, 2007: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01837503 , or see **HERE**.

8. See FM INVESTMENTS LLC's AoO from January 30, 2007: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01868655 , or see **HERE**.

The following final 3 Articles of Organization are telling because they were filed by Randy White, who is a "vested manager" (partner), along with Sidney Thomas and Chris Jaska, in the Articles for Trinity Property Development, LLC.

16

These filings are for 3 businesses that White owns, without Thomas or Jaska.

9. See PRAISE COMMUNITY CHURCH's Affidavit of Publication from October 5, 2009: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=01702 636 , or see **HERE**.

10. See PCIC INC's Articles of Organization from May 25, 2011: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=03482 105 , or see **HERE**.

11. See NKB TECHNICAL SOLUTIONS, LLC from November 25, 2014: see https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=04871 134, or see **HERE**.

I have made a combined copy of all **11** PDFs of the AoO, just as I found them on the ACC's website. See 11 valid AZ filings, see here https://6cf84077-fe04-4d44-a00a-efbcc6967552.filesusr.com/ugd/9b9c25_5b59713 ac092445fa187dfe1731dd7c1.pdf , or see **HERE**.

<u>More Clear Evidence Of Fraud & Falsification</u> (#2)

Comparing both pages of the AoO for Trinity Property Development LLC (at https://6cf84077-fe04-4d44-a00a-efbcc6967552.filesusr.com/ugd/9b9c25_e27f150 33d154d4fb153c70cb34c93ec.pdf , or see **HERE**), you will notice that the margins on the left side of the page (the portion where it says: "DO NOT PUBLISH THIS

SECTION NOTE" at the top) are at a slight, but noticeable, angle on the first page. And you'll notice, on the second page, this angle is much sharper. You will also notice that there is a grey background in this left margin area on the second page; but on the first page, the background in the left margin area is white. This indicates that these pages were printed on different printers, or on different settings

Now, if you compare this fraudulent document to the 11 other legitimate filings that the Plaintiff has linked to this Reply, you'll notice that:

1. All of pages in those 11 separate filings are consistent and uniform (meaning, each page has the same duplication quality):

2. All of the valid filings that use the ACC's forms (with writing in the left margin) are consistent and uniform, none of them have a white background on one page and grey on another. (See valid docs #2,3,4,5,7.)

3. On the few valid documents that were copied at a slight angle, all of the pages of those documents were copied at the same angle (except those documents that are composed of multiple documents; in which case, all of the separate documents were copied at the same, consistent angle).

The fact that the Articles of Organization of Trinity Property Developers LLC are inconsistent in printing quality—between the two pages, AND the fact that the angles that the pages were printed at are noticeably different, shows that these pages were not printed by the Arizona Corporation Commission, and they are fake.

**ARGUMENT #3:** THE DISTRICT MADE DANGEROUS
AND OBVIOUS MISTAKES IN **BRIGGS v CAMERON**

Judge Chhabria made innumerable mistakes in his Order, but none more

**dangerous to America** than his complete omission and ignorance of volumes of

evidence of large scale, institutional criminal fraud, committed by the Defs and

their associates, described throughout the Briggs v Cameron Complaint, largely

involving Def Google LLC and Internet Archive (and associates like Microsoft,

who are not named in this suit). But, when on page 124 of the Complaint, the

Plaintiff advised the Court that the Defs' theft of the Plaintiff's ideas, which are

currently being used by the US military, had exposed America to an extreme

imminent risk, the **Nation** acted. The Plaintiff wrote:

> [Note: Private industry (Google, Amazon) seems intent to create
> variations of Plaintiff's GenLab/soul machine (aggregating GPS,
> cell-phone, social and market data to predict crime and military
> outcomes). For the record, although these ideas make for a great sci-fi
> plot, Plaintiff believes, in practice, these systems will foment dissent and
> give foreign hackers (of the systems or the data) the ability to predict US
> **military responses** and allow hackers (or the owners) to predict markets.]

Five weeks later, April 8, 2020, the Dept of Justice shut down a Google

undersea internet cable from the US to Hong Kong; laid 2016 to 2018. The

Plaintiff literally protected the US from ideas that the Defs stole from the Plaintiff.

The Plaintiff's filings provide countless examples of how his work inspired

art, technology and politics. The Plaintiff offers two more unreported examples of

how major world forces seem to value, pursue and adopt the Plaintiff's perspective.

19

EXAMPLE ONE

March 23, 2021, Plaintiff sent 2 "tweets" from his Twitter account. These tweets cited **the 1948 Genocide Convention**, its definitions, and compared US abuse of Blacks and Native Americans to these definitions. The 1948 Genocide Convention is virtually never mentioned in modern media. These tweet read:

1. "The 1948 UN Genocide Convention says there are 5 separate ways to commit genocide on a group:
   1. killing members;
   2. causing serious bodily or mental harm;
   3. inflicting destructive conditions;
   4. preventing births;
   5. transferring their children to another group."
2. "Genocide is a critical issue everywhere. According to the UN Genocide Convention, the US is, or has been, guilty of genocide against Blacks, Natives, Asians, immigrants, etc, & the UK is, or has been, guilty of genocide against India, Middle East, Africa, Ireland, immigrants, etc"



Eight days later, China's Foreign Minister convened a press cenference, in which she cited **the 1948 Genocide Convention**, it's definitions, then addressed US genocide of Native Americans, and US abuse of Blacks and Muslims. These were the first and primary issues addressed in this internationally covered press conference. The foreign minister supported these points with a photo slideshow,

20

then published the transcript on the foreign minister's official website.



**Above:** China's foreign minister's website, features the 3/31/21 press conference.
https://www.fmprc.gov.cn/mfa_eng/xwfw_665399/s2510_665401/t1865988.shtml

To assume that this strategy is/was common for China would be mistaken.

<u>The day after</u> the Plaintiff tweeted these thoughts about how the 1948 Genocide Convention squares with US domestic action, China adopted the Plaintiff's approach, to counter American criticism of China's treatment of its Uyghur Muslim population, in Xinjiang. Within a week, US news outlets noticed China's sudden change in tactics. On March 26, 2021, in a New York Post article titled **"China defends itself on human rights by pointing to history of slavery in US,"** Caitlin McFall reported China's **"recently developed"** defense tactic.

> "China has recently developed a defense tactic of trying to turn around accusations of oppression against it by bringing up US social justice issues."
>
> (https://nypost.com/2021/03/26/china-defends-itself-on-hum
> an-rights-by-pointing-to-history-of-slavery-in-us/)

21

Example Two

On August 18, 2020, the Plaintiff filed the "Second Declaration Of Steve Wilson Briggs (Plaintiff) In Support Of Complaint." On page 58, the Plaintiff used the heading: "**Battle For The Soul Of America**." On page 59, paragraph 213, he wrote: "I view this suit, and all future suits, as a **battle for the soul of America**."

Two days later, August 20, 2020, Joe Biden discussed "winning **the soul of America,**" in his nomination acceptance speech at the Democratic National Convention. Soon "**Battle For The Soul of America**" appeared the Biden[4] campaign website. By October 17, 2020, the phrase was so rampant that in a **New York Times** article titled "***Biden and Trump Say They're Fighting for America's 'Soul.' What Does That Mean?***" Elizabeth Dias explored the origin of the phrase:

> It is a phrase that has been constantly invoked by Democratic and Republican leaders. It has become the clearest symbol of the mood of the country, and what people feel is at stake in November. Everyone, it seems, is fighting for it.
> "This campaign isn't just about winning votes. It's about winning the heart and, yes, **the soul of America**," Joseph R. Biden Jr. said in August at the Democratic National Convention, not long after the phrase **"battle for the soul of America"** appeared <u>at the top of his campaign website, right next to his name</u>.
> Picking up on this, a recent Trump campaign ad spliced videos of Democrats invoking **"the soul" of America**, followed by images of clashes between protesters and the police and the words "Save America's Soul," with a request to text "SOUL" to make a campaign contribution.

---

[4] Joe Biden would not knowingly steal ideas from a fellow American. Biden received the Plaintiff's ideas from his Communications Director, Kate Beddingfield, who worked at the Motion Picture Association (owner of **MovieLabs**) from 2011 to 2015, as Vice President of Corporate <u>Communications</u>.

But none of this is surprising. Page "v" of the Complaint explains that in March of 2018 the Plaintiff received a call from an attorney named Shirley Potash:

26. March 15, 2018, Plaintiff received a voicemail from a woman named Shirley Potash, a retired L.A. attorney in her 80s, who had worked as a paralegal for years before becoming an attorney. [A biography about Ms Potash from Top Attorneys Of North America, is attached as Exhibit A.] Ms Potash said she had just read a legal article regarding the 9th Circuit's recent (unpublished) ruling against Plaintiff re Briggs v Blomkamp ( BvB ) 2013, and said she felt the Court had committed an injustice, and asked Plaintiff to return her call.

27. Plaintiff immediately returned her call. During the 20-30 minute talk, Ms Potash said that for years she worked for a law firm that represented many big L.A. film studios. She explained, "You know what I think? I think, not only did they [the Briggs v Blomkamp defs] read your screenplay, **I think a lot of them [Hollywood professionals] read it."**

Thus, 1.5 years before this case was filed, Ms Potash was aware that many powerful people were aware of, and had accessed the Plaintiff's ideas.

### History Of Improper Relations Between The 9th & Hollywood

For generations, the Ninth has been accused of improperly favoring, Hollywood. January 14, 2014, an L.A. Times article "**As Trial Nears, Ninth Circuit Court Accused of Favoring Hollywood,**" explained:

"…. the "Hollywood Circuit" — as it has been dubbed — stands accused of routinely siding with the home-turf entertainment industry….

"Chief Judge Alex Kozinski has also taken the court to task at times for being overprotective of the entertainment industry. In his colorful dissent in the 1992 Vanna White decision, Kozinski wrote that the majority's "Orwellian" decision to give the game show hostess a new property right to stifle a parody that merely evoked her image was a "**dangerous**" precedent.

"It was Kozinski who quipped in that case that, ""For better or

worse, we are the court of appeals for the Hollywood Circuit."

The article describes the 9th's  Kozinski's  improper contacts with Hollywood:

"He holds movie nights at the 9th Circuit courthouses in Pasadena, San Francisco and occasionally Seattle, where judges and lawyers pitch in for pizza and beer, watch films and hear from scriptwriters and other industry insiders about the movies. Director George Lucas used to provide the court with films before they came out on DVDs, he said, and Kozinski has dined with Clint Eastwood, "a very sweet, humble guy.""

### The World Is Watching

The Plaintiff's court filings are public documents, visible to the world. The Plaintiff's filings explain how the Defs hacked into his computer and phone, and committed unprecedented internet and business fraud. This information would be meaningful to all law-abiding foreign country. Any foreign country could access this information, if not directly, through diplomats or agents. Upon reading these filings, Russia, for example, may have reasoned that if US courts and the US government will not intervene to stop US corporations from violating international law (much less intervene to protect the Plaintiff's IP rights), then, to remain competitive, Russia might also hack/monitor the Plaintiff's laptop and phone.

Concerning this, on August 25, 2020, in paragraphs 221 of his Amended Second Declaration, the Plaintiff expressed very specific concerns:

"221. American Courts have a duty. **The world is watching**. There are foreign nations who proudly, aggressively and properly defend the intellectual property of their citizens. Does America still sit with the family of civilized nations that properly and vigilantly defend the copyright claims of their citizens? Or does America dine with thieves?"

Seven months later, China told America that the US no longer speaks to China from a position of strength; the most forceful statement that China had ever made to the USA, during times of peace. A few weeks later, Russia and China publicly reaffirmed their alliance. These events may have been, in part, a reaction to America presenting itself as a leader of intellectual property rights, and accusing China of international intellectual property theft, while US courts hypocritically ignored the corporate Defendants' theft of the Plaintiff intellectual property.

The Defs' crimes are unprecedented. This Circuit's failure to consistently uphold copyright law, confirmed by Skidmore v Led Zeppelin, contributed to a lawless corporate culture that went off the rails. This Court should reaffirm that America has a profound conscience, and the law matters, and has teeth, and in America courts do not choose winners and losers based on the parties' race or corporate status. Rather, the law is administered as the Constitution requires, and all parties are accountable, and actions have consequences, in America.

## CONCLUSION

For the foregoing reasons, the Appellant asks This Court to reverse the District Court's Order/Judgment, in favor of the Appellant, or remand for trial.

Dated: April 4, 2021.    Respectfully Submitted: /s/ Steve Wilson Briggs

Steve Wilson Briggs<br>
Appellant, In Persona Propria

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(e), which allows for local circuit court variation, and pursuant to Ninth Circuit Rules 32-1(b), which requires that reply briefs may not exceed 7,000 words, and Ninth Circuit Rules 32-1(f), which requires that a "handwritten or typewritten reply brief may not exceed 25 pages," I hereby certify that the preceding and attached brief of Appellant Steve Wilson Briggs contains **5,972** words, excluding those parts exempted by FRAP 32(f). I further certify, per FRAP 32(a)(5) and 32(a)(6) that the attached Opening Brief was rendered in a proportionally spaced typeface, and size 14-point Times New Roman font.

Dated: April 4, 2021                    /s/ Steve Wilson Briggs

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief Of Appellant/Plaintiff Steve Wilson Briggs with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 4, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 4, 2021                    /s/ Steve Wilson Briggs