No. 20-17229

————————————————

# UNITED STATES COURTS OF APPEALS
# FOR THE NINTH CIRCUIT

————————————————

STEVE WILSON BRIGGS

Appellant/Petitioner

vs.

JAMES CAMERON, NEWS CORPORATION, TWENTIETH CENTURY FOX
FILM CORPORATION, ZERO GRAVITY MANAGEMENT LLC,
INTERNET ARCHIVE, LIGHTSTORM ENTERTAINMENT INC,
MICHAEL PIERCE, MARK WILLIAMS, ROBERT MARK KAMEN

Appellees/Respondents

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
Case No. CV 20-1596-VC,
Hon. Judge Vince Chhabria

————————————————

**Appellant's Petition for Panel Rehearing and Rehearing En Banc**

————————————————

Steve Wilson Briggs
4322 Chico Ave,
Santa Rosa, CA 95407
(510) 200 3763
snc.steve@gmail.com

*Appellant, In Propria Persona*

## **<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS ……………………………………………….. i

INTRODUCTION ……………………………………………………... 1

ARGUMENT

    A. **The Proceeding Involves A Question Of Exceptional Importance**. *Ashcroft v Iqbal*, narrowly passed with a 5-4 decision. Justice Breyer was so concerned that Iqbal would corrupt US courts that he wrote a separate dissent. The District's flawed Judgment and unlawful removal of the Petitioner's filings from the docket, and the fact that 9th judges and SCOTUS justices appear to have formed corporations—while the Defs were infringing the Petitioner's work and also forming unlawful shells, indicate Breyer's concerns were prescient ………………………..………...…………………………..... 9

    B. **The Opinion Directly Conflicts With An Existing Opinion By Another Court Of Appeals And The Supreme Court, And Substantially Affects A Rule Of National Application, In Which There Is An Overriding Need For National Uniformity.** The Judgment improperly relied on dissection analysis, which has been rejected by the 2nd Circuit, other circuits, and rejected by 9TH —in *LA Printex v Aeropostale*. Thus, the Judgment goes against both the 2nd Circuit, the 9th Circuit's own rulings, and against US Supreme Court *Feist Publications v. Rural Tel. Serv. Co*. ……………….. 12

    C. **The Proceeding Involves A Question Of Exceptional Importance.** The Judgment conflicts with the Founders' *Copyright Clause*, designed after the UK's *Statute of Anne*, enacted to protect common creators from powerful, corporate infringers. Yet, the Judgment is predicated on *Iqbal*, which gives preference to corporations. In its 12-year existence, *Iqbal* has ended tens of thousands of individual's actions against corporations, but never to end corporate action against a private citizens. ……………………………………………………. 14

i

**D. (1) The Opinion Directly Conflicts With An Existing Opinion Of The Supreme Court And Substantially Affects A Rule Of National Application In Which There Is An Overriding Need For National Uniformity; (2) An Apparent Conflict With Another Decision Of The Court Was Not Addressed In The Opinion**. ……………………………… 14


CONCLUSION ………………………………………………………… 15

CERTIFICATE OF COMPLIANCE ………………………………………… 16

CERTIFICATE OF SERVICE ………………………………………………... 16

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v Iqbal* (2009)……………………………………………. 2, 6, 8, 9, 10, 13

*Bell Atlantic v Twombly* (2007) …………………………………………… 8, 10

*Brigggs v Blomkamp* (2013) ……………………………………...… 7

*Briggs v Spacey* (2018) …………………………………….....……… 6, 7

*Briggs v Universal* (2017) ……………………………………..……. 6

*Cavalier*, 297 F.3d at 826–27 ………………………………………………… 11

*Connely v Gibson* ………………………………………………………………... 10

*Feist Publications, Inc. v. Rural Tel. Serv. Co.* (1991) ……………………… 11, 12

*Haines v. Kerner, 404 U.S. 520* (1971) ……………………………………….. 13

*Knitwaves, Inc. v. Lollytogs Ltd*., 71 F.3d 996, 1003 (2d Cir.1995) ………..... 11, 12

*Sid & Marty Krofft Tele. v. Mcdonald's Corp* ……………………………………… 12

*L.A. Printex Industries. Inc. v Aeropostale, Inc.* (9th Cir. 2012) ……………. 11, 12

*Leatherman v Tarrant County Narcotics* (1992) …………………………………... 10

*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir.2002) ………………………… 11

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) ………………… 11

*Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.2003) ……………………………... 12

*Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) …………………… 11, 12, 14

*Swierkiewicz v Sorema (2002)* ……………………………………………………... 10

*Eden Toys, Inc. v. Marshall Field Co.*, 675 F.2d 498, 500 (2d Cir. 1982) ………. 12

*Twentieth Century-Fox Film Corp. v. MCA, Inc. 715 F.2d 1327* ……………..... 1, 6

**STATUTES**

Copyright Clause …………………………………………………………….. 2, 14

Statute of Anne ……………………………………………………………....…….. 14

**RULES**

FRCP Rule 4(a)(1)(A) ……...……………………………………………………….. 8

FRCP Rule 60 ………………………………………………………………………… 10

FRAP 35…………………………………………………………………………… 15

FRAP 40…………………………………………………………………………… 15

FRCP Rule 73 ………………………………………………………………………… 15

iii

28 U.S.C. § 636(c) ………………………………………………………………. 15

28 U.S. Code §§ 144 and 455………………………………………………………. 15

Copyright Act of 1976…....……………………………………………………... 15

*Corpus Juris Secundum*……………………………………………………….. 15

## Periodicals, Etc.

Ain't It Cool News ……………………………………………………………….. 4

Bloomberg's BusinessWeek …………………………………………………….... 3

Engadget ………………………………………………………………………... 4

Guardian ………………………………………………………………………... 4

IGN ……………………………………………………………………………… 4

Internet Archive…………………….…………………………………………….. 4

JoBlo ……………………………………………..……………………………… 4

MTV.com ………………………………………..……………………………… 4

New York Times ……………………………………..……………………….. 14

The Hollywood Reporter ………………………………………………………… 3

Variety.com ……………………………………………………………………... 4

Wikipedia …………………………...…………………………………………... 4

# INTRODUCTION

The Appellant-Petitioner  submits this motion as the proceeding involves a question of exceptional importance, and as other such grounds for rehearing exist.

This is a Copyright Infringement case. Copyright Infringement simply requires showing (1) Access, (2) Substantial Similarity. The Appellant-Plaintiff-Petitioner's Complaint shows clear Access, and Substantial Similarity beyond all doubt. **In fact, the Petitioner's infringement claims were so overwhelming that his Opening Brief includes a comparison of his 13,000 words of complex, detailed, uncommon and original claims, against the 13 generic claims cited by the 9th in *Twentieth Century-Fox Film Corp. v. MCA, Inc.* (9th Cir. 1983), the only film industry infringement case in which the 9th reversed, citing 20th Century Fox's 13 tenuous claims, ostensibly as sufficient to reverse**.

All of this should be black and white; however, uniquely and corruptly, in this case, the Defendants (**Defs**) supported their infringement by publishing dozens of fraudulent web-articles and using Internet Archive (**IA**) to produce countless fake *crawls* of these articles. Debunking these fake articles and crawls required that the Petitioner add 60 pages to the Complaint—and hundreds of pages of exhibits. Yet, neither the District Judgment nor the 9th's Memorandum mentions the Defs' fraud. And neither court referred the Defs' felonious acts to any prosecutorial body.

The Petitioner's Opening shows the District Judgment is a series of profound

legal errors, supporting the Defendants' *Ashcroft v Iqbal* (**Iqbal**) dismissal motions.

The 9th's Memorandum (**Mem**) is also based *Iqbal* (Mem, p 2, line 4-7).

Thus, this case hinges on (1) the District's misapplication of law to support the Defs' ***Iqbal*** motions**,** and (2) the 9th's Mem's citation of ***Iqbal***.

Since *Iqbal*'s affirmation by the Supreme Court in 2009, countless scholars have called it unConstitutional. The Petitioner agrees with this view, and believes *Iqbal* is at diametrical odds with the Founders' intent, as Copyright Law (which flows from the *Copyright Clause* of the Constitution) was intended to protect common citizens from powerful, corporate thieves. <u>But *Iqbal* is **exclusively** used to favor corporate defendants (**defs**) over private individual, *pro se*, and minority plaintiffs</u>. Worse, *Iqbal* has accelerated US global decline, as it improperly allows courts to discretionarily dismiss lawsuits, <u>without any reasoning</u>, by simply claiming a plaintiff failed to state a plausible claim; upending Due Process.

Following *Iqbal*'s allowances, the District Judgment omitted ALL of the Petitioner's 40+ pages of infringement Claims (see Complaint, pp 60-95, also 6-11). To support its untenably decision, **<u>the District unlawfully removed 25 of the petitioner's filings from the docket</u>**. Thus, after using *Iqbal* to silence the Petitioner, the District/9th unlawfully concealed the Petitioner's true claims.

The Ninth's Memorandum, supported the District's use *Iqbal v Ashcroft*, to

suppress the following 25 facts (and many others):[1]

1. The Complaint showed Def *Zero Gravity Management* (**ZGM**), a film company, filed a CA business cancellation and went out of business, Sept 2005. Four months later, Jan 20, 2006, after finding ZGM requesting scripts in an online listing, the Petitioner emailed ZGM, to see if they would like to read his script. ZGM affirmed, and instructed the Petitioner to send his script. **Six days later, ZGM filed a new CA business statement, <u>and went back in business.</u>** 9 months later (Sept 2006) ZGM's owners formed *Future Service, Inc* (**FSI**)[2], which quickly became a subsidiary of Defs **News Corp** and **20th Century Fox**, makers of the infringing films (Avatar and Taken).[3]

2. The Complaint explains how the Defs, to unlawfully backdate their infringement, and fraudulently claim credit for the Plaintiff's idea, created a elaborate false story that James Cameron wrote a *scriptment* called *Project 880* (later claiming the scriptment was originally titled *Avatar*) around 1996.

3. The Defs supported this "scriptment" hoax by having major publications

---

[1] The documents referred to herein can also be seen at www.DataCaper.com.

[2] FSI was an unlawful **shell** company (as were the many dozens of companies identified in the Complaint), outlawed Jan 1, 2021. In September 2019, as the Plaintiff wrote the Complaint, after 13 years in "business", FSI suddenly closed.

[3] The Petitioner's *Am'd 2nd Motion In Limine* showed that 5 months before Avatar was released (2009), ZGM's founder, Michael Pierce, secured huge *clients* (U.S. Marines, Google…) for his new, unknown business *212 Degrees Fahrenheit Corp*. This appears as if the US government paid into an unlawful shell. These business relationships developed just after the Petitioner added revolutionary tech concepts to his script (stolen by the Defs, tech corps, and the US government).

publish backdated, fake articles about the scriptment (in publications like: The Hollywood Reporter, Bloomberg's BusinessWeek, Guardian, Engadget, MTV.com, JoBlo, IGN, Ain't It Cool News, Variety.com, Wikipedia).

4. The Defs reinforced their fake articles with countless fake Internet Archive (**IA**) *crawls*. The Complaint shows how to identify the fake URL element.

5. The Complaint provides evidence that the Defs and associates repeatedly hacked the Plaintiff for at least 14 years, and includes a video attachment of the Defs' hackers hacking the Petitioner as he prepared a video for the court.

6. The Petitioner's *motions in limine* name the hacking company the Defs used to steal his works, ***MovieLabs*** (AKA ***Motion Pictures Laboratories***), formed by the Motion Picture Association (**MPA**) in 2005, AND the filings named the actual hackers (including Steve **Weinstein**, a MovieLabs exec).

7. The Petitioner's motions show Steve Weinstein teaches/taught "Hacking For Defense" to US intelligence prospects at Stanford U, and the 16th Air force.

8. The Petitioner's filings show the MPA and MovieLabs are owned by the Big 6 film studios, which include Defendant Twentieth Century Fox.

9. The Plaintiff's filings show that MovieLabs patented its hacking technology, replete with a schematic that explains how MovieLabs hacks a single "local peer" (the Petitioner) and distributes the hacked information to its associates.

10. The Petitioner's motions showed (1) News Corp/20CentFox used Weinstein

and his prior company, _Liberate Technologies_ (**LT**) to hack the Plaintiff from 1999 to 2005, (2) LT and Weinstein are named on a hacking patent, in 1996.

11. The 4th Motion In Limine shows, in 2004, federal prosecutors indicted LT's COO, Donald Fitzpatrick, because LT "used its own funds to create the false appearance of legitimate revenue," as LT produced no legitimate service.[4]

12. The Complaint shows how the Defendants created dozens of fraudulent and unlawful shell corporations, related to the theft of the Plaintiff's work.[5]

13. Hon Judge Orrick mysteriously recused from the case, June 2020; replaced by Judge Chhabria, who presided over 2 of the Petitioner's prior cases.

14. Plaintiff moved to disqualify Chhabria, but Chhabria would not step down.

15. As this matter moved to appeals, without asking or notifying the Petitioner, **the District/9th unlawfully removed 25 of the plaintiff's filings from the docket**, and did not restore them until the Plaintiff notified the 9th.

16. When the Petitioner filed the Complaint (Mar 4, 2020), the Clerk's office attempted to immediately assign the matter to a magistrate judge; unheard of. However, because of hacking activity that the Petitioner experienced

---

[4] All of the hacking companies named in the Petitioner's filings (Liberate Technologies, MovieLabs or Motion Picture Laboratories, Electronic For Imaging, EFI, etc.) produce no hardware or tangible product, because their only product is unlawful computer access (hacking), and unlawful surveillance and data theft.

[5] In December 2020, as a result of the Plaintiff's filings, the US Congress outlawed shell corporations. This amounts to an effort to remedy some of the symptoms, without addressing the sickness and the crime (infringement, theft and hacking).

shortly before filing (see Complaint), he chose to submit a signed *declination* <u>with</u> the Complaint. The Clerk's office employee then called someone on the office phone and informed them the Petitioner had already signed the declination. Soon, the Clerk, herself, came out to observe. After 10 minutes the Clerk's Office accepted and process the Complaint, as usual.

17. The Petitioner's filings show: (1) The Defs used the US Copyright Office to produce fraudulent and backdated copyright registrations, (2) the US Copyright Office provided these illegal services to foreign nations.

18. The Petitioner's Opening includes a comparison of his 13,000+ words of creative claims, vs the 13 generic claims of *20th Century-Fox v. MCA, Briggs v Spacey*[6]

19. *Briggs v Spacey* (**BvS**) was originally filed as *Briggs v Universal* (**BvU**) 2017; dismissed when the Petitioner could not serve Spacey, who went into hiding, for over a year, the day BvU was filed. (BvU was refiled as BvS).

20. In *BvS*, Judge Chhabria <u>also</u> improperly used <u>*Iqbal*</u> to dismiss the Petitioner.

21. In BvS, the Petitioner made 3 requests of the Clerk to enter Spacey and Brunetti into default for failure to respond to service (thus, the Petitioner should have prevailed). However, the Clerk and District took no action.

---

[6] The Plaintiff has found no occasion when a US court sought to undermine a corporate copyright plaintiff's claims by referring to that corporate plaintiff's prior copyright disputes in its judgment, as the District's Judgment does to the Petitioner. To attend this injustice, key points from these prior actions are addressed here.

Case: 20-17229, 12/31/2021, ID: 12328306, DktEntry: 43, Page 12 of 24

22. BvS was initiated, in part, because the corporate defs and Spacey closed and destroyed TriggerStreet.com (a filmmaking social network) in 2014, less than a week after the Plaintiff filed his *Briggs v Blomkamp* appeal; thus, destroying all records of industry pros who accessed the Plaintiff's script.[7]

23. Chhabria used *Iqbal* to dismiss BvS, on a Saturday, 3 days before Christmas, 2018. **Two days later, def Kevin Spacey emerged from hiding.**

*Briggs v Blomkamp*

24. In 2014, in *Briggs v Blomkamp* (**BvB**), the Petitioner moved to exclude the defs' expert, Jeff Rovin, for extreme fraud and falsification. In 2016, as BvB sat in the 9th, on appeal, the Plaintiff alerted the 9th that Rovin had recently admitted, on the Sean Hannity Show (FOX News), to being an elite "fixer", who wrote false "smear" stories. The 9th took no action, and affirmed.

25. Nov 2014, immediately after the Petitioner filed Notice of Appeal in BvB, Kevin Spacey destroyed the Trigger Street social network (the access point in BvB); thus, destroying all records of all film industry professionals who accessed the Plaintiff's work. The Petitioner informed the 9th of this, a year before the 9th reached its BvB decision. The 9th took no notice or action.

---

[7] In March 2013, Spacey and Brunetti, filed for a patent for the secret whitelisted email system that TriggerStreet utilized, which allowed elite "whitelisted" users to access the Plaintiff's work (and other users' works) without notifying the Petitioner or other users. In 2016, the US Patent office awarded Spacey a patent for this system (# 9,306,887 B1). This same technology allows companies like *Twitter* to grossly mislead and deceive users as to their true viewers/followers.

**ARGUMENT**

I.  <u>**The Proceeding Involves A Question Of Exceptional Importance.**</u>
    ***Ashcroft v Iqbal*, narrowly passed with a 5-4 decision. Justice Breyer was
    so concerned that Iqbal would corrupt US courts that he wrote a
    separate dissent. The District's flawed Judgment and unlawful removal
    of the Petitioner's filings from the docket, and the fact that 9th judges
    and SCOTUS justices appear to have formed corporations—while the
    Defs were infringing the Petitioner's work and also forming unlawful
    shells, indicate Breyer's concerns were prescient.**

*Ashcroft v Iqbal* (2009) commits several unthinkable judicial evils, two of

which manifest in this case: **(1)** *Iqbal* subverts private citizens' Constitutional right

to due process; **(2)** *Iqbal* allowed for the corruption of the Court itself.

Justice Breyer was so concerned about *Iqbal*'s potential to corrupt that he

wrote a second, separate dissent; concerned about interference with "<u>the proper</u>

<u>execution of the work of the government</u>." As explained in Wikipedia (screenshot):

> Justice Breyer filed a separate dissent, saying that neither the briefs nor the Court's opinion provided
> convincing grounds for finding that trial courts had inadequate means to prevent unwarranted interference
> with "the proper execution of the work of the government."[23]

Iqbal increased the risk of court corruption because it eliminated transparency

and accountability, by allowing judges to dismiss cases, for any reason, by simply

saying the plaintiff *failed to state a claim*; worse, Iqbal allowed judges to do this

without representing the plaintiffs' claims. With this vast power, corporations and

the rich would want to influence these unaccountable judges' decisions.

As we will see, after the Plaintiff created his script, (1) the Defs began to

form shell corporations, (2) the Supreme Court passed *Twombly* and *Iqbal*, and

(3) central US judges (SCOTUS and 9th Circuit) began to form shell corporations.

**In late 2006, the Petitioner conceived and introduced the concept of _aggregated data_, AND the concept of predicting crime and military outcome based on aggregated data. These concepts have since generated trillions in international commerce.** The Complaint shows that shortly after the Defs invited the Petitioner to send his script (Jan 20, 2006), they began falsifying documents and creating shell companies.[8] <u>In late 2006, as the Petitioner introduced the concept of aggregated data, the Defs' intensified their creation of shells, and partnered with very powerful clientele, including the US government.</u>[9]

During this period (late 2006 to 2007) a person who appears to be 9th *Chief Justice* Sidney R Thomas formed 2 shells in Arizona (9th Cir), *Thomas-Hume Holdings, LLC* (Sept 2006), and *Trinity Property Development, LLC* (Jan 2007).

Worse, 3 of the 5 SCOTUS justices who supported *Iqbal* may have owned shell corporations from 2006 to 2010. A person named John G Roberts Jr owns (or owned) 5 MD companies. A person named Anthony Kennedy owns/owned 3 MD companies. A person named Antonin Scalia owned 4 companies in Ohio.

During this period (2006-2010), when 9th judges and SCOTUS justices may have been forming shells, the SCOTUS made 2 rulings that betray the

---

[8] Later, the Plaintiff learned certain of the Defendants (News Corp, 20CentFox) began accessing and infringing his work years earlier than the Complaint reported.
[9] ZGM's Michael Pierce, out of work Sept 2005, opened *212 Degrees Fahrenheit Corporation* in 2008, and quickly called the US Marines & Google his clients.

Constitution, ***Bell Atlantic v Twombly*** (2007) and ***Ashcroft v Iqbal*** (2009); these cases are often called "Twiqbal." Iqbal and Twombly violate the Constitution's *Copyright Clause* (modelled after the UK's Statute of Anne; enacted **to protect private citizens** from the wealthy and corporate thieves), because they are used to dismiss actual person's *actions* against corporations, but NOT to dismiss corporate *actions* against individuals. *Iqbal* is so abused that in just 10 years it became one of the 5 most cited cases ever. By 2017, Iqbal had been cited over 85,000 times (now closer to 130,000), as Wikipedia's Iqbal entry explains (screenshot below):

> The decision, referenced with predecessor opinion *Bell Atlantic Corp. v. Twombly* as "*Twiqbal*," has been described as possibly "the most consequential ruling in Chief Justice John G. Roberts Jr.'s 10-year tenure" because it has "transformed civil litigation in the federal courts" to the detriment of individuals.[2] It is one of the five most cited Supreme Court decisions of all time.[3] As of 2017, it had been cited over 85,000 times, mostly in lower courts. It has likely made it harder for civil rights cases to proceed through the Federal Judiciary.[16]

Wikipedia's *Bell Atlantic Corp v Twombly* entry (screenshot below) explains how any heightened pleading standard is fundamentally at odds with FRCP:

> *Twombly* remains controversial as of 2020. Not only did it overturn *Conley v. Gibson*, but it also overturned *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1992). *Leatherman* had unanimously established that the heightened pleading standard was fundamentally at odds with the Federal Rules of Civil Procedure, and the court opined that the only way to change the standard would be to amend the Rules. The Court had further cemented this idea with another unanimous ruling in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 500 (2002), making *Twombly* all the more surprising.[3]

The coincidental creation of the Petitioner's work, the formation of business entities owned by the Defs and perhaps US judge/justices, and the creation of two federal laws that violate Constitutional tenets, is troubling. Worse, this creates a clear conflict of interests, as U.S. judges/justices, who may own shell companies,

are not likely to support judicial transparency—or hear the appeal or Writ of a

petitioner who has, or may, exposed their unlawful shells.

II.   **The Opinion Directly Conflicts With An Existing Opinion By Another
      Court Of Appeals And The Supreme Court, And Substantially Affects A
      Rule Of National Application, In Which There Is An Overriding Need
      For National Uniformity**. **The Judgment improperly relied on
      DISSECTION ANALYSIS, which has been rejected by the 2nd Circuit,
      other circuits, AND REJECTED BY 9TH in *LA Printex v Aeropostale*;
      thus, the Judgment goes against both the 2nd Circuit, and against the 9th
      Circuit's own rulings. The Judgment also goes against US Supreme
      Court *Feist Publications, Inc. v. Rural Tel. Serv. Co.* (1991).**

      The District Judgment improperly utilizes dissection analysis (removing

"unprotectable" elements from it comparison), as seen on page 2 of the judgment:

> The test for substantial similarity on a motion to dismiss involves
> "assess[ing] the objective similarities of the two works, **focusing only on the
> protectable elements of the plaintiff's expression**." Rentmeester v. Nike,
> Inc., 883 F.3d 1111, 1118 (9th Cir. 2018), overruled on other grounds
> by Skidmore v. Zeppelin, 952 F.3d 1051 (9th Cir. 2020). **The court filters out
> unprotectable elements, such as ideas and concepts as well as material in
> the public domain.** The remaining protectable elements are then compared...

This is classic dissection analysis, rejected in the 2nd Circuit by *Knitwaves,*

*Inc. v. Lollytogs*, AND rejected in the 9th by ***L.A. Printex v. Aeropostale, Inc***:[10]

> "**Original selection, coordination, and arrangement of unprotectible
> elements may be protectible expression**. See Feist Publ'ns, 499 **U.S.** at
> 362; Cavalier, 297 F.3d at 826–27; Metcalf v. Bochco, 294 F.3d 1069, 1074
> (9th Cir.2002) ("Each note in a scale, for example, is not protectable, but a
> pattern of notes in a tune may earn copyright protection."). For this reason,
> the Second Circuit has rejected the argument that, "in comparing [fabric]

---

[10] Dissection was also soundly rejected by the Ninth in its most famous copyright
case (*Krofft v. Mcdonald's* (1977)). Yet, the Ninth still uses dissection, but only to
help corporations steal I.P. Dissection is not used against corporate defendants.

designs for copyright infringement," a court must "**dissect** them into their separate components, and compare only those elements which are in themselves copyrightable." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1003 (2d Cir.1995) (**"[I]f we took this argument to its logical conclusion, we might have to decide that there can be no originality in a painting because all colors of paint have been used somewhere in the past."**....

"...The idea of a floral pattern depicting bouquets and branches is not protectible, and C30020 has elements that are not protectible, for example the combination of open flowers and closed buds in a single bouquet or the green color of stems and leaves. See Satava v. Lowry, 323 F.3d 805, 811 (9th Cir.2003). **However, L.A. Printex's original selection, coordination, and arrangement of such elements is protectible**." ——*L.A. Printex*

The actual text of *Knitwaves v. Lollytogs* rejects dissection more forcefully:

We do **not** consider the rather specialized facts of Folio Impressions as authority for the broad proposition which Lollytogs advances: that, in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable. As the district court noted, if we took this argument to its logical conclusion, we might have to decide that "there can be no originality in a painting because all colors of paint have been used somewhere in the past." Transcript of proceedings of Sept. 1, 1992, at 4. "It is commonplace that in comparing works for infringement purposes — whether we employ the traditional "ordinary observer" test or the Folio Impressions "more discerning" inquiry — we examine the works' "total concept and feel." See Eden Toys, Inc. v. Marshall Field Co., 675 F.2d 498, 500 (2d Cir. 1982). As the Supreme Court's decision in Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991), makes clear, a work may be copyrightable even though it is entirely a compilation of unprotectible elements.

Yet, against *L.A. Printex*, *Krofft* and *Knitwaves*, the District used dissection

to remove the Petitioner's expressions; (**in violation of US Supreme Court's *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 1991**).[11]

---

[11] The Judgment/Memorandum also go against *Skidmore v Led Zeppelin* expressed intent to bring the 9th's copyright rulings into alignment with other circuits.

**III.**    <u>**The Proceeding Involves A Question Of Exceptional Importance**</u>. **The Judgment conflicts with the Founders' *Copyright Clause*, designed after the UK's *Statute of Anne*, enacted to protect common creators from powerful, corporate infringers. Yet, the Judgment is predicated on *Iqbal*, which gives overwhelming, unConstitutional preference to corporations.**

May 2015, New York Times' reporter Adam Liptak wrote his article:

"**Supreme Court Ruling Altered Civil Suits, to Detriment of Individuals**",

explaining how *Iqbal* "transformed civil litigation in the federal courts," and <u>made</u> <u>it much easier for US courts to dismiss citizens' **suits**</u>. One of countless articles about Iqbal's Constitutional and moral problems. As explained earlier, *Iqbal* allow courts to effortlessly dismiss actual person's actions against corporations, and has been used to do so tens of thousands of times; but *Iqbal* has never dismissed corporate action against actual persons. This shows unfair design and application; against our Founders' intent for Copyright Law, and against the Constitution —which never imagined corporations' rights exceeding actual persons' rights.

**IV.**    **(1)** <u>**The Opinion Directly Conflicts With An Existing Opinion Of The Supreme Court And Substantially Affects A Rule Of National Application, In Which There Is An Overriding Need For National Uniformity; (2)**</u> <u>**An Apparent Conflict With Another Decision Of The Court Was Not Addressed In The Opinion**</u>.

The Petitioner is an award winning writer. His Complaint was clear and persuasive. Yet, against *Haines v. Kerner, 404 U.S. 520* (1971), affirming pro se pleadings are held to "less stringent standards," the Court improperly omitted the Petitioner's claims, to rule that he failed to state a plausible claim. The fallacy of

this is proven by the fact that the District/9th **unlawfully** <u>removed 25 of the</u>

<u>Petitioner's filings from the docket</u> (forcing the Petitioner to petition the 9th to

restore his filings). This removal was done to conceal the truth: the Petitioner's

claims are very accurate, persuasive, and show systemic corruption.

The District and the 9th's failure to liberally construe the Complaint, their

use of *Iqbal* to hide the Petitioner's true claim, and their removal of the Petitioner's

filings from the docket, all violate the 5th and 14th Amendments (assuring citizens

will not be deprived of life, liberty, or *property*, without **due process** of law).

These many judicial failures, once again, done in favor of corporations, and

against an individual plaintiff, violate *Skidmore v Led Zeppelin*, which directs that

"nothing in copyright law suggests that a work deserves stronger legal protection

simply because it is more popular or owned by better-funded rights holders."

NOTE: The Petitioner-Plaintiff-Appellant must abide page-length limits,

thus, he cannot fully present the many other strong bases for rehearing and

reversal. Therefore, he presents the following eight (8) Argument headings, which

are developed in the Motion too Recall the Mandate (accompanying this petition).

**The Opinion Directly Conflicts With An Existing Opinion Of
The Supreme Court And Substantially Affects A Rule Of
National Application, In Which There Is An Overriding Need
For National Uniformity**

**V.**     The 9th abridged the Petitioner's due process rights, by concluding it's Mem,
<u>"No further filings will be entertained in this closed case,"</u> when the
Petitioner was entitled to at least one more filing (Per FRAP 35, 40).

**VI.**   The 9th's method of denying *compilation of preexisting* claims (*selection and arrangement* claims) violates the *Copyright Act of 1976.*

**VII.**   The Judgment is fundamentally unsound, as it is improperly asserts that "unprotectable elements" must be removed/filtered, and the "protectable elements" compared. But the Copyright Act of 1976 (17 U.S.C.), which governs all US copyright law, does not recognize the terms "unprotectable" or "protectable," nor does the U.S. Supreme Court.

**VIII.**   The Judgment improperly omits the *expressions* of the Petitioner's ideas -original and preexisting- (rather than omitting the ideas themselves). This is against Copyright Law.

**IX.**   The court removal of <u>25</u> of the Petitioner's filings from the district docket, without notifying the Petitioner, violated the Petitioner's due process right to have his filings available for public inspection.

**X.**   Judge Chhabria would not step down from the case, although the Petitioner duly moved to disqualify Chhabria, under 28 U.S. Code §§ 144 and 455; violating the Petitioner's right to a fair hearing.

**XI.**   The District Clerk, violated the Petitioner's right to a fair and proper proceeding, by improperly attempting to submit the Petitioner's action (Complaint) to magistrate judge, without the Petitioner's consent, in violation of FRCP Rule 73, and 28 U.S.C. § 636(c).

**XII.**   The Judgment violates foundational Copyright guidelines, from *Corpus Juris Secundum* (CJS), which the 9th has supplanted with its notoriously flawed case law, and various improper "homemade" authorities.

## CONCLUSION

For the foregoing reasons, the Appellant, Steve Wilson Briggs, respectfully

asks this Court to grant his request for a rehearing and/or rehearing en banc.

Dated: December 31, 2021.          Respectfully Submitted: <u>/s/ Steve Wilson Briggs</u>

Steve Wilson Briggs
Appellant, In Persona Propria

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Federal Rules of Appellate Procedure 32(a)(4)-(6), the attached petition, titled **Appellant's Petition for Panel Rehearing and Rehearing En Banc**, does not exceed 15 pages (and per Circuit Rule 35-4 or 40-1, the attached petition contains 3,764 words, excluding those parts exempted by FRAP 32(f)). I further certify, per FRAP 32(a)(5) and 32(a)(6) that the attached **Appellant's Petition for Panel Rehearing and Rehearing En Banc** was rendered in a proportionally spaced typeface, and size 14-point Times New Roman font.

Dated: December 31, 2021          /s/ Steve Wilson Briggs

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Appellant's Petition for Panel Rehearing and Rehearing En Ban** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 6, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 31, 2021           /s/ Steve Wilson Briggs

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 20 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEVE K. WILSON BRIGGS, | No. 20-17229 |
| Plaintiff-Appellant, | D.C. No. 3:20-cv-01596-VC |
| v. | |
| JAMES CAMERON; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Submitted October 12, 2021[**]

Before:    TALLMAN, RAWLINSON, and BUMATAY, Circuit Judges

Steve K. Wilson Briggs appeals pro se from the district court's judgment

dismissing his action alleging copyright infringement and other related claims. We

have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's

dismissal for failure to state a claim. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Cir. 2016).  We affirm.

The district court properly dismissed Briggs's direct, vicarious, and contributory copyright infringement claims because Briggs failed to allege facts sufficient to state a plausible claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (a plaintiff fails to show he is entitled to relief if the complaint's factual allegations "do not permit the court to infer more than the mere possibility of [the alleged] misconduct"); *see also Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (setting forth elements of direct copyright infringement); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-22 (9th Cir. 2001) (vicarious copyright infringement and contributory copyright infringement claims require direct copyright infringement).

The district court properly dismissed Briggs's remaining claims because they lacked any arguable basis in law or fact.  *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (a "frivolous" claim lacks an arguable basis either in law or in fact; the "term 'frivolous' . . . embraces not only the inarguable legal conclusion, but also the fanciful factual allegation").

The district court did not abuse its discretion by denying Briggs's motion to disqualify the district judge because Briggs failed to establish extrajudicial bias or prejudice.  *See United States v. McTiernan*, 695 F.3d 882, 891-92 (9th Cir. 2012) (setting forth standard of review and circumstances requiring disqualification).

20-17229

We do not consider matters not specifically and distinctly raised and argued in the opening brief, or arguments and allegations raised for the first time on appeal.  *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

No further filings will be entertained in this closed case.

**AFFIRMED.**

20-17229