No. 20-17229

_____

## UNITED STATES COURTS OF APPEALS
## FOR THE NINTH CIRCUIT

_____

STEVE WILSON BRIGGS

Appellant/Petitioner

vs.

JAMES CAMERON, NEWS CORPORATION, TWENTIETH CENTURY FOX
FILM CORPORATION, ZERO GRAVITY MANAGEMENT LLC,
INTERNET ARCHIVE, LIGHTSTORM ENTERTAINMENT INC,
MICHAEL PIERCE, MARK WILLIAMS, ROBERT MARK KAMEN

Appellees/Respondents

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
Case No. CV 20-1596-VC,
Hon. Judge Vince Chhabria

_____

## PLAINTIFF-APPELLANT'S MOTION TO RECALL THE MANDATE

_____

Steve Wilson Briggs
4322 Chico Ave,
Santa Rosa, CA 95407
(510) 200 3763
snc.steve@gmail.com

*Appellant, In Propria Persona*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………………….. i

INTRODUCTION ……………………………………………………………... 1

ARGUMENT…………………………………………………………………… 4

1. RECALLING THE MANDATE IS NECESSARY BECAUSE THE COURT DENIED THE APPELLANT'S CONSTITUTIONAL RIGHT. **The Ninth's method of denying "compilation of preexisting" claims (AKA "selection and arrangement" claims) violates Copyright Law, per the _Copyright Act of 1976_** .………………….. 5

2. RECALLING THE MANDATE IS NECESSARY TO PROTECT THE INTEGRITY OF THE JUDICIAL PROCESS. **The Judgment improperly opined on ideas, without assessing the Plaintiff's <u>expression</u> of his original ideas (and his unique expression of preexisting ideas). This is against Copyright Law, and violated the Petitioner's due process and Constitutional property rights** ………….. 7

3. RECALLING THE MANDATE IS NECESSARY BECAUSE THE COURT DENIED THE PLAINTIFF-APPELLANT'S CONSTITUTIONAL RIGHT. **The Judgment is fundamentally unsound, as it is based on the assertion that "unprotectable elements" must be removed[1] and the "protectable elements" compared. But these terms (_unprotectable_, _protectable_) are meaningless in Copyright Law. <u>The Copyright Act of 1976 (17 U.S.C.), which governs US copyright law, does not recognize these terms or concepts,</u> nor does the U.S. Supreme Court** …………..……. 9

4. RECALLING THE MANDATE IS NECESSARY TO PREVENT INJUSTICE. **The District Judgment wholly relied on overruled Copyright Law (_Rentmeester, Funky_, overruled due to their use of inverse ratio), and ignored the Plaintiff's citation of prevailing law (_Printex, Skidmore_)** ..……………………………………………….. 12

---

[1] Removing elements before comparison is dissection, rejected by _LA Printex_.

i

5.  RECALLING THE MANDATE IS NECESSARY TO PROTECT THE PLAINTIFF-APPELLANT'S CONSTITUTIONAL RIGHTS, AND TO PROTECT THE INTEGRITY OF THE JUDICIAL PROCESS. **The district Clerk, attempted to violate the Petitioner's due process right to a fair and proper proceeding, by improperly attempting to submit the Petitioner's action to a magistrate judge, without the Petitioner's consent, in violation of FRCP Rule 73, and 28 U.S.C. § 636(c)** …………………………………………………... 14

6.  RECALLING THE MANDATE IS NECESSARY TO PROTECT THE INTEGRITY OF THE JUDICIAL PROCESS. **Three months into the case, Judge Orrick recused, and was replaced by Judge Chhabria—whom the Petitioner quickly moved to disqualify, under 28 U.S. Code §§ 144 and 455; which allow litigants to disqualify a judge for bias, and guarantees "<u>A party may file only one such affidavit in any case</u>." But, Judge Chhabria would not step down; violating the Petitioner's due process rights, under 28 U.S. Code §§ 144, 455** …………………………………………………... 16

7.  RECALLING THE MANDATE IS NECESSARY TO PROTECT THE PLAINTIFF-APPELLANT'S CONSTITUTIONAL RIGHTS, AND TO PROTECT THE INTEGRITY OF THE JUDICIAL PROCESS. **As this matter moved to appeals, without asking or notifying the Petitioner, the District unlawfully REMOVED 25 OF THE PLAINTIFF'S FILINGS FROM THE PUBLIC DOCKET and did not restore them until the Plaintiff notified the 9th** …………. 17

8.  RECALLING THE MANDATE IS NECESSARY BECAUSE THERE THERE HAS BEEN FRAUD ON THE COURT. **The Judgment's improper mention and mischaracterization of each of the Petitioner's prior lawsuits, IN THE FIRST SENTENCE, is unprecedented, and has NEVER been done to a corporate plaintiff in 9th history. This shows prejudice, and a malicious intent to discredit the Petitioner, and subvert his right to a fair hearing. Further, this violates a central tenet of *procedural due process*, which requires *a decision based exclusively on the evidence presented*. Because the Judgment introduced unrelated facts, and made a false statement fact, the Court engaged in misconduct, fraud on the court, and violated the Petitioner's due process** ………... 18

9.  RECALLING THE MANDATE IS NECESSARY TO PREVENT INJUSTICE. **The Judgment Is Riddled With Central Failures:**

A. **The Judgment's omission of the Petitioner's claims amounts to fraud on the court, and violates the due process principles of "a decision based exclusively on the evidence presented."**

B. **The District and 9th failed to do a basic plot comparison. The Plaintiff's plot  was never mentioned, nor any fragment thereof. The failure to present the overarching plot claims was a abridgement of justice.**

C. **The petitioner made unique <u>original</u> idea/expression claims, demonstrating at least SIX of his idea/expressions were original, new expressions, never done before. The District made an inexcusable error by failing to acknowledge these claims** ……………. 20

10. RECALLING THE MANDATE IS NECESSARY TO PROTECT THE INTEGRITY OF THE JUDICIAL PROCESS. **The impropriety of this dismissal is proven by comparing the Judgment and Mem in *this* film infringement case, to the film infringement reversal opinion issued by the 9th in *<u>Zindel v. Fox Searchlight Pictures, Inc</u>* (2020) where, although the infringement claims did not show a fraction of the Petitioner's claims' originality, the 9th properly reversed the dismissal, because dismissal is not highly favored in infringement cases. This Court will also notice, in *Zindel*, the 9th correctly cited *L.A. Printex* (as the Petitioner advised, herein); but *Printex* was ignored by the District. In *Zindel*, the 9th ignored the many cases that have been overruled by *Skidmore*—two of which (Rentmeester and Funky Films) form the improper basis of the Judgment** ………... 25

11. RECALLING THE MANDATE IS NECESSARY TO PROTECT THE PLAINTIFF-APPELLANT'S CONSTITUTIONAL RIGHTS. **The 9th abridged the Petitioner's due process rights, by concluding it's Mem, "<u>No further filings will be entertained in this closed case</u>," as the Petitioner was entitled to one more filing (Per FRAP 35, 40)** ……. 28

12. RECALLING THE MANDATE IS NECESSARY TO PREVENT INJUSTICE. **The Judgment violates and ignores the foundational copyright resource, *Corpus Juris Secundum* (C.J.S.), which the 9th supplanted with famously flawed case law, and homemade authorities** …………………………………………………………..… 28

13. RECALLING THE MANDATE IS NECESSARY TO PROTECT THE INTEGRITY OF THE JUDICIAL PROCESS. **The Judgment and Memorandum are based on invalid law, improperly and surreptitiously introduced in 1982** …………………………………... 30

Closing Concerns …………………………………………………………... 31

CONCLUSION ……………………………………………………………… 35

CERTIFICATE OF SERVICE …………………………………………….... 36

## **TABLE OF AUTHORITIES**

**CASES**

*Zipfel v. Halliburton Co*., 861 F.2d 565 (9th Cir.) …………………………….....1

*Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 239, 244 (1944) …. 1

*Demjanjuk v. Petrovsky*, 10 F.3d 338, 339, 356 (6th Cir. 1993) ……………….… 1

*Verrilli v. City of Concord* (9th, 1977) ……………………………………….… 1

*Aerojet-General Corp v. American Arbitration Ass'n,* 478 F.2d 248, 254 (9th Cir., 1973) ………………………………………..…………………… 1

*L.A. Printex Indus*., *Inc*. *v*.  *Aeropostale*, (9th Cir. 2012……… 3, 7, 8, 9, 12, 13, 26

*Sid & Marty Krofft Tele. V. Mcdonald's Corp*, (1977) ……………………... 3, 8, 31

*Feist Publications, Inc., v. Rural Telephone Service Company, Inc.*, U.S. (1991) ………………………………………………………..…… 4, 5

*Twentieth Century-Fox Film Corp. v. MCA, Inc.* (9th Cir, 1983) ………… 7, 31, 35

*Universal Pictures Co., Inc. v. Harold Lloyd Corp.* (1947) …………….. 9, 28, 29, 33

*Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1118 (9th Cir. 2018) ………..…… 9, 10, 13

iv

*Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ………..... 9, 10, 12, 13, 30, 35

*Funky Films, Inc. v. Time Warner Entertainment Co.*,
L.P., 462 F.3d 1072, 1077 (9th Cir. 2006) …………………………………... 13, 30

*Briggs v Blomkamp* (2013) ………………………………….…. 13, 18, 19, 32

*Zindel v. Fox Searchlight Pictures, Inc* (2020) ……………...… 9, 14, 25, 26, 27, 29

*Briggs v Universal* (2017) ………………….....…………………… 16, 18, 19

*Briggs v Spacey* (2018) ……………………………...…………… 16, 17, 18, 19

*Nixon v. Warner Communications,* US (1978) …………………………..…… 18

*Arnstein v Porter*, 1946 (2nd Cir) ………………………………………… 19, 32

*Southern Pacific Co. v. Bogert*, 1919 (US) ……………………………………… 19

*Johannsongs-Publishing, Ltd. v. Lovland* (9th Cir., Nov 29, 2021) …………….. 25

*Memory v. Nutt*, D.C., 28 F.2d 132, 135 ……………………………..… 28, 29

*West Publishing Co. v. Edward Thompson Co.* C.C., 169 F. 833, 854 ………..… 29

*Kouf v Walt Disney* (1994) …………………………………………………… 30

*Berkic v Crichton* (1985) …………………………………………...… 30

*Litchfield v Spielberg* (1984) ………………………………………….... 30

*Jason v Fonda* (1982) ………………………………………………… 30, 31, 33

*Stewart v. Wachowski* (2006) …………………….…………………………… 32

*Ashcroft v Iqbal*, UUS (2009) …………………….……………………….... 33

*Kalem Co. V. Harper Bros* (1911) ………………………………………………… 34

In *Twentieth Century-Fox Film* Corp *v. Stonesifer* (9th Cir., 1944) …………….. 34

*Universal Pictures v. Harold Lloyd Corp* (1947, 9th) ……………………….... 34

*Benny v. Loew's Incorporated* (9th Cir., 1956) ………………………………. 34

## STATUTES & RULES

28 USC § 2253(c)(2) ………………………………………………………... 1

28 U.S.C. § 636(c) ………………………………………………………... 3, 14, 15

28 U.S. Code § 144 …………………………………………………. 3, 16, 17

28 U.S. Code § 455 …………………………………………………. 3, 16, 17

17 USC § 602(a)(2) ………………………………………………………... 19

*Copyright Act of 1976* …………………………………….…. 3, 5, 6, 9, 10, 12

Copyright Act of 1909 …………………………………………...……….. 5, 10, 12

*Corpus Juris Secundum* (C.J.S.) ……………………………… 3, 28, 29, 30, 31, 33

FRCP Rule 73 …………………………………………………………. 3, 14, 15

FRAP 40 …………………………………………………………………… 28

FRAP 35 …………………………………………………………………… 28

## Other Sources:

Patry on Copyright ……………………………………………………… 26

Nimmer on Copyright ……………………...…………………………… 31, 32

## INTRODUCTION

*Motions to recall the mandate* are uncommon. The Judgment and 9th's Memorandum are replete with violations, sufficient to recall. A court's authority to recall is well established, in the code and case citations below, and others.

- 28 USC § 2253(c)(2) allows courts to recall a mandate "only if the applicant has made a substantial showing of the <u>denial of a Constitutional right</u>."

- *Zipfel v. Halliburton Co.*, 861 F.2d 565 (9th Cir.), cert. denied, 486 U.S. 1054 (1988) confirmed that "the authority of a Court of Appeals to recall its mandate is clear. While the authority is not conferred by statute, it exists as part of the court's power to <u>protect the integrity of its own processes</u>."

- *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 239, 244 (1944), and *Demjanjuk v. Petrovsky*, 10 F.3d 338, 339, 356 (6th Cir. 1993) establish that recalls are allowed in response to <u>fraud on the court</u>, and <u>to protect the integrity of the judicial process</u>.

- Per *Verrilli v. City of Concord* (9th, 1977) recalls must be compelled by "an overpowering <u>sense of fairness</u> and a firm belief that this is the exceptional case requiring recall of the mandate in order <u>to prevent an injustice</u>."

- "The authority of a Court of Appeals to recall a mandate is not conferred by statute, but its existence cannot be questioned. . . ." *Aerojet-General Corp v. American Arbitration Ass'n,* 478 F.2d 248, 254 (9th Cir., 1973)

October 16, 2020, the District entered an indefensible *Judgment*; affirmed by the 9th's flawed *Memorandum* (**Mem**), filed October 20, 2021. As significant as the Judgment's and Memorandum's legal flaws are, during the legal process, the District and the 9th also (1) <u>engaged in multiple violations of the Petitioner's Constitutional right to due process</u>, (2) <u>engaged in multiple acts of conduct, or misconduct, which affected and undermined the integrity of the judicial process</u>, and the District may have (3) engaged in at least one act of *fraud on the court*.

The District/9th's twelve (12) mandate recallable actions began BEFORE the petitioner filed his Complaint, and continued until the 9th filed it's Mem, which improperly concluded **"No further filings will be entertained in this closed case"**—at a time when the Petitioner was entitled to at least one more filing (Per FRAP 35, 40). This statement was an overt subversion of the Petitioner's due process rights, <u>and caused the Petitioner not to submit his Rehearing petition on time (as the language of the Memorandum declared the Court's resolve to subvert the Petitioner's rights</u>). The District/9th's 12 violations include such actions as:

a. The court surreptitiously and unlawfully <u>removed 25 of the Petitioner's filings from the public district docket</u>, without notifying the Petitioner (this was not discovered until 7 weeks <u>after</u> the Petitioner submitted his Opening to the Ninth; leaving the Petitioner unable to publicly verify his claims; forcing the Petitioner to write the district and the 9th, for an explanation).

b. The district Clerk, violated the Petitioner's right to a fair and proper proceeding, by improperly and covertly attempting to submit the Petitioner's action to magistrate judge, without the Petitioner's consent, in violation of FRCP Rule 73, and 28 U.S.C. § 636(c).

c. The Ninth's method of denying "compilation of preexisting" claims (*selection and arrangement* claims) violates Copyright Law, per the *Copyright Act of 1976*; this subverted the Petitioner's due process rights.

d. The Judgment improperly asserts that "unprotectable elements" must be removed/filtered, and "protectable elements" compared. But <u>the Copyright Act of 1976  (17 U.S.C.), which</u> governs Copyright Law, does not recognize the terms "unprotectable" or "protectable," nor does the US Supreme Court.

e. The Judgment and Mem rely on the improper practice of "filtering out" and removing elements; this is dissection analysis, rejected by *L.A. Printex* <u>and</u> *Krofft* (and by the 2nd Circuit) and violates the Copyright Act of 1976.

f. Judge Chhabria would not step down from the case, although the Petitioner duly moved to disqualify Chhabria, under 28 U.S. Code §§ 144 and 455. This violated the Petitioner's right to a fair hearing and fair treatment.

g. The Judgment violates and ignores foundational Copyright guidelines, the *Corpus Juris Secundum* (C.J.S.), which the Ninth has supplanted with its notoriously flawed case law, and various improper "homemade" authorities.

**ARGUMENT**

It is well established that this Court has authority to recall a district mandate. Such occasions include: (1) when a court denies a litigant a Constitutional right, or (2) to protect the integrity of the judicial process, or (3) out of an overpowering sense of fairness, or (4) to prevent injustice, or (5) when there is fraud on the court. All of these circumstances were satisfied both in the Petitioner's Actions' time in the district and in the Ninth (Complaint filed 3/4/20; Appeal filed 12/16/ 20).

The District and the Ninth engaged in at least TWELVE (12) SUBSTANTIAL violations to the Petitioner's Constitutional right to due process. Any one of these infractions would be sufficient to recall the mandate.

***Due Process*** means fairness of process.

*Law.com* defines **due process** as: <u>a fundamental principle of fairness in all legal matters, both civil and criminal, especially in the courts.</u>

*Cornell Law's Legal Information Institute* explains of **due process**: "These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures."

*Encyclopedia Britannica* defines **due process** as "a course of legal proceedings according to rules and principles that have been established in a system of jurisprudence for the enforcement and protection of private rights."

The first of the District's/9th's many violations of the Petitioner's due process

rights occurred at the pre-litigation phase (before the Petitioner filed his Complaint), and these violations continued at all phases, including the appellate.

The courts' 12 violations of the Petitioner's rights, under Constitution, Code, and common law, are identified in, and explained under, the following 12 enumerated headings. These incidents are presented in no particular order. However, the petitioner believes Arguments #4, 5, 6, 7, 8, and 11, each show extrajudicial malice and contempt for Constitutional due process rights and procedures, sufficient to warrant a recall of the mandate, and perhaps disciplinary measures. While, the other Arguments (1, 2, 3, 9, 10, and 12), separately, or collectively, also satisfy the threshold to recall the mandate.

1. **The Ninth's method of denying "compilation of preexisting" claims (AKA "selection and arrangement" claims) violates Copyright Law, per the _Copyright Act of 1976_.**

The Copyright Act of 1976 (17 USC), section 101 (definitions), defines and protects **compilations** of pre-existing material: ""A "**compilation**" is a work formed by the collection and assembly of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.""

A plaintiff's right to claim **compilations** of _preexisting_ ideas ("unprotectable elements") goes back to the Copyright Act of 1909, and is further protected and reinforced by the U.S. Supreme Court in _Feist Publications, Inc., v. Rural_

*Telephone Service Company, Inc.* U.S. (1991), and other cases.

The Ninth has distorted and manipulated compilation claims, and re-named them "selection and arrangement *unprotectable* elements" claims. The Ninth has improperly replaced the word "preexisting" with "unprotectable". (As we will see in Argument #3, "unprotectable" has no place or meaning in U.S. Copyright Law).

But much more disturbingly, the Ninth has perverted copyright law, so as to deny a plaintiff's the ability to to make or protect his compilation of pre-existing materials claim, by decreeing that all copyright claims are subject to a "two-part test". **The first test only assesses "protectable" elements of a plaintiff's claims. A plaintiff cannot advance to the second test (where his/her compilation of pre-existing, or "unprotectable", elements can be assessed) unless the court discretionarily determines that there is infringement of the "protectable' elements.** That is correct. And that is **unConstitutional**. In the Ninth Circuit over 95% of copyright litigants are dismissed in the first round, before they ever get their pre-existing ("unprotectable") claims assessed. Thus, for over 40 years, the Ninth has used this scheme to deny THOUSANDS of actual person litigants and *pro se* litigants their right to claim their compilation of pre-existing elements under the Copyright Act ot 1976 (17 USC). This is **unConstitutional**, as it denies litigants a chance to ever get their "pre-existing" compilations claims considered.

Worse, the Petitioner found, in virtually ever case involving a corporate

plaintiff, the Ninth does not make any "unprotectable" argument, it simply allowed the corporate plaintiff to advance to the second round. Worse yet, in cases involving corporate plaintiffs, such as *Twentieth Century Fox v MCA* (1983), the Court accepts the legitimacy of the excruciatingly absurd and generic claims of these corporations; whereas the Ninth swiftly dismisses the profound and complex claims of actual persons, as in this case. This is counter to the Founders intent for Copyright Law, under the Copyright Clause of the Constitution.

**2. The Judgment omitted the Plaintiff's expression of his original ideas, (and preexisting ideas), without assessing the claimed expression of those ideas. This is against Copyright Law, and violated the Petitioner's due process and Constitutional property rights. This is also against *L.A. Printex,* which makes dissection analysis (removing, filtering) unlawful.**

Copyright Law <u>was created to protect the U.S. citizens' expression of their ideas</u> (although their ideas are not copyrightable, their *expression* of their ideas is). But around 1920, Hollywood moved to California, to escape the many motion picture lawsuits filed by Thomas Edison. Once in the Ninth Circuit, Hollywood would slowly groom and persuade the Ninth that ideas are not "protectable," in <u>any</u> way. Eventually, the Ninth seemingly stopped evaluating the expression of actual persons' ideas. This is against Copyright procedure, and is unConstitutional (as it improperly denies creators' ownership of their copyright protected property).

Federal courts' duty to copyright plaintiffs is to protect the "expression" of their ideas, <u>as claimed by these plaintiff</u>. The 9th's selective understanding of this

duty is seen in *Universal Pictures Co., Inc. v. Harold Lloyd Corp.* (1947), and *Sid & Marty Krofft Tele. V. Mcdonald's Corp* (1977), where the court stated:

> "[A]n **infringement is not confined to literal and exact repetition** or reproduction; it includes also the **various modes** in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy." [1]

This statement shows the 9th (selectively) protecting a corporate plaintiff's *expression* of its ideas (from all the "various modes" that it might be "imitated") and committed to identify and confronting any efforts to "disguise the piracy."



In *Krofft*, because of the Ninth understood the expression of the idea is what must be analyzed, and that all various modes, imitations and disguises must not be tolerated, the 9th found McDonald's "Mayor McCheese" (above, left) infringed "H. R. Pufnstuf" (above, right), although the two characters looked nothing alike.[2]

Proof that the District/Ninth improperly excluded the Plaintiff's expression of his ideas from its "assessment" is seen in any honest evaluation of the contested works, and in the plain language of the Judgment, page 2, para 3:

---

[1] Although the *Krofft* Court cited *Harold Lloyd Corp*, this citation is from C.J.S.
[2] In *Krofft* (1977) and *LA Printex* (2012) the Ninth resoundingly rejected dissection analysis; yet, the District/9th conspicuously used dissection in this mattter.

The test for substantial similarity on a motion to dismiss involves "assess[ing] the objective similarities of the two works, focusing only on the **protectable elements** of the plaintiff's **expression**." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1118 (9th Cir. 2018), overruled on other grounds by Skidmore v. Zeppelin, 952 F.3d 1051 (9th Cir. 2020). The court filters out **unprotectable** elements, such as **ideas** and concepts as well as material in…

Two of the more illogical aspects of this passage are, ONE: "expressions" are copyrightable ("protectable"), independently, or in association with other aspects of a work (a *dog* may not be copyrightable, a *doghouse* may not be copyrightable; but a dog who sleeps on top of his doghouse is). The Court's failure to contemplate the Petitioner's expressions, individually, or proximate to his other expressions, is improper. TWO: an *expression*, by definition, is not an idea; thus, saying "ideas" must be removed from the *expression* is wrong, and a deliberate obfuscation.

Finally, the Plaintiff reminds the Court that per *L.A. Printex*[3] dissection analysis is no longer acceptable in the Ninth; thus, when the District "filtered out" and removed elements, the District engaged in improper methods.

3. **The Judgment is fundamentally unsound, as it is based on the assertion that "unprotectable elements" must be removed[4] and the "protectable elements" compared. But these terms (*unprotectable*, *protectable*) are meaningless in Copyright Law. The Copyright Act of 1976 (17 U.S.C.), which governs US copyright law, does not recognize these terms or concepts, nor does the U.S. Supreme Court.**

The Copyright Act of 1976 (17 U.S.C.) governs all U.S. copyright law. The

---

[3] *LA Printex* is universally applied. *Printex* underpins *Skidmore v Led Zeppelin* (a music case decision) and *Zindel v. Fox Searchlight* (a 2021 film case decision).
[4] Removing elements before comparison is dissection, rejected by *LA Printex*.

first section of 17 U.S. Code (§ 101) is the *Definitions* sections; defining all essential copyright terms. **Nowhere in these definitions, and nowhere in the *COPYRIGHT ACT OF 1976* are the word "protectable" or "unprotectable". The U.S. Supreme Court has never used "*protectable*" or "*unprotectable*" in a copyright ruling.** These terms are also not in the *Copyright Act of 1909*.

It appears film industry defense attorneys introduced the terms "protectable" and "unprotectable" into Ninth around 1983 (*See v Durang*), to mislead courts/jurors that some things are automatically copyrightable, or not. The 9th then accepted these false assertions, as it created its own branch of copyright law, centering on the unlawful practice of *removing* "unprotectable" elements. But US copyright law is governed by the **Copyright Act of 1976** (17 USC), which does not recognize these terms, concepts or practices. More, the Copyright Act of 1976 protects **compilations** (collections, arrangements) of unprotected elements. **Thus, arrangements of unprotected elements are protected expressions.**

The entire District Judgment is based on the false term *unprotectable*, citing the overruled *Rentmeester* case, p 2, para 3:

> The test for substantial similarity on a motion to dismiss involves "assess[ing] the objective similarities of the two works, focusing only on the **protectable elements** of the plaintiff's expression." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1118 (9th Cir. 2018), overruled on other grounds by Skidmore v. Zeppelin, 952 F.3d 1051 (9th Cir. 2020). The court filters out **unprotectable elements**, such as ideas and concepts as well as material in the public domain. The remaining **protectable elements** are then compared "to assess similarities in the objective details of the works. Id."

The terms "protectable" and "unprotectable" have no place in copyright law, **because what is "protectable" is always a matter of law**, to be determined by the correct application of law. For example, although each of the images below are



made entirely of elements that are unprotected (simple colors, simple shapes), they are all copyrightable, because the unprotected elements are combined in a minimally creative way. Perhaps, in a better example, **below**, the Petitioner blended two public domain photos (a city in a lighting storm, and a butterfly) to create a highly creative, compelling, very "protectable" new expression. But in the 9th's improper removal of "unprotectable" elements scheme, the "unprotectable" elements would be removed (the headlights, the city in the storm, the butterfly), and **there is nothing left to protect**. This is corrupt, and this has no basis in law.



Some time in the late 70s or early 80s, the Ninth allowed film corporations to invent a new copyright *Substantial Similarity* assessment "method," in which all

"unprotectable" elements are removed, before any comparison is done. This is fundamentally counter to proper copyright methodology.

By improperly citing law that improperly uses the terms "protectable" and "unprotectable" (which have no meaning in copyright law), and by basing its decision on unsound law and language, contrived to improperly dismiss valid lawsuits, the District violated the Plaintiff's right to a fair hearing.

### 4. The District Judgment wholly relied on overruled Copyright Law (*Rentmeester, Funky*, overruled due to their use of inverse ratio), and ignored the Plaintiff's citation of prevailing law (*Printex, Skidmore*).

For assessing **Substantial Similarity**, *L.A. Printex v Aeropostale*, 9th Cir (2012) is the prevailing, comprehensive, gold standard case. *L.A. Printex*'s standing as the 9th's preeminent infringement case was further cemented in 2020, when *Skidmore v Led Zeppelin* overruled most of the previous standard 9th cases, which relied on **INVERSE RATIO**.[5] Skidmore overruled and invalidated these prior cases on the issue of ***access***, because inverse ratio created an improper, *adjustable* access scale; and *Skidmore* overruled and invalidated these prior cases on **substantial similarity**, because *inverse ratio* gave these cases an improper similarity assessment advantage, or disadvantage, based on the *amount* of access).

*Skidmore* cannot be used to assess substantial similarity, because its similarity guideline is the 1909 Copyright Act, not the current 1976 Copyright Act. Although

---

[5] It is troubling that the 9th allowed Melville Nimmer to introduce *inverse ratio* into 9th law in *Krofft*. Why this is so troubling is explained on pages 30, 31, herein.

*Skidmore* had no access question, it is the reigning 9th access guideline, because the *Skidmore* court chose to make an important access declaration.

However, although the Petitioner informed the District and 9th of *LA Printex* (in his Oppositions to the Defs' MTDs, and in his Opening to the 9th, Arg #6, #7), the Judgment's only substantial similarity citations, ***Rentmeester*** (the primary citation, p 2, para 2) and ***Funky Films*** (p 2, para 2, quoting prior law), are both specifically overruled and rejected by *Skidmore* (*Rentmeester* is rejected in *Skidmore*, at pp 26, 29, 30; *Funky Films* is rejected by *Skidmore*, at pp 29, as the Court identifies cases that are plagued by problems, caused by inverse ratio).

All cases that rely on *inverse ratio* are now **<u>entirely</u>** moot, logically, because inverse ratio (an invalid access tool) improperly gave these prior cases similarity advantages or disadvantages, based on an *inverse ratio* of access.

<u>Thus, the District/9th violated the Petitioner's Constitutional due process right to a fair hearing, by using overruled law to dismiss his Complaint.</u>

NOTE: The District/9th's refusal to use prevailing law was malicious, and NOT an oversight, as the Petitioner repeatedly advised the District and Ninth of *LA Printex*—<u>in this case, AND in prior action, *Briggs v Blomkamp*</u> (**BvB**). (See BvB MFSJ, 2014, and Ninth appeal, 2015, where the District and Ninth ignored the prevailing citation, to rule against the Petitioner, on overruled law.) Thus, the Petitioner has tried to get the Ninth to use *Printex* for over 7 years, unsuccessfully.

The fact that *this* Court *willfully* omitted prevailing law, is proven the 9th's opinion in film industry infringement case ***Zindel v. Fox Searchlight Pictures, Inc*** (2020) (see argument #10), <u>where the 9th properly used the prevailing *L.A. Printex* for its substantial similarity ruling</u>, and reversed the dismissal (as dismissal is "not highly favored" on questions of substantial similarity, and as ***reasonable minds could differ on substantial similarity***). The District/9th subverted the Petitioner's due process rights by omitting these practices in the Petitioner's case/Judgment.

**5. The district Clerk, attempted to violate the Petitioner's due process right to a fair and proper proceeding, by improperly attempting to submit the Petitioner's action to a magistrate judge, without the Petitioner's consent, in violation of FRCP Rule 73, and 28 U.S.C. § 636(c).**

When the Petitioner filed the Complaint (3/4/20), at the United States District Court, Northern District Of California, Clerk's Office, at 450 Golden Gate Ave., San Francisco, CA, an employee at Clerk's Office, whom the Petitioner believes was Deputy Clerk <u>Anna Sprinkles</u> (who signed the summons in this matter) attempted to immediately assign the matter to a magistrate judge, without asking the Petitioner and without his consent. This was unlawful. The District Clerk's Office standard procedure is to assign the case to a duly appointed judge, provide filers a receipt and a number of forms, including a *Consent Or Declination To Magistrate Judge* form, which both parties must consent to or decline to (with a signature). Usually, litigants have several weeks, or months, before making this

14

decision. If a plaintiff consents (with a signature) to a magistrate, and if the defendants also consent, the Clerk then reassigns the case to a magistrate.

However, against standard procedure, the deputy clerk explained that she was assigning the case to a magistrate judge; thus, subverting due process of procedure, and subverting the Petitioner's rights under **FRCP Rule 73** ("*a magistrate judge may, if all parties consent, conduct a civil action or proceeding*") and under **28 U.S.C. § 636(c)** ("*Upon the consent of the parties, a full-time United States magistrate judge or a part-time... may conduct any or all proceedings*"). However, because of peculiar events (described in the Complaint), occurring just prior to filing his Complaint, the Petitioner arrived to the Clerk's Office prepared, and he informed the deputy that he possessed a signed *Declination To Magistrate Judge* form, which he intended to submit <u>with</u> the Complaint.

The deputy clerk then called someone on the Clerk's Office phone, and informed them the Petitioner had a signed declination. Soon, the Court Clerk, Susan Soong (whom the Petitioner recognized from her photo on the wall) appeared, and observed. After about 10 minutes of phone calls and private discussion, the Clerk's Office accepted the Complaint and *declination*; assigning the case to the <u>Honorable Judge William Orrick</u>. All of this shows the district willfully subverted the Petitioner's right to due process, and shows a reckless culture of misconduct in the Ninth.

**6. Three months into the case, Judge Orrick recused, and was replaced by Judge Chhabria—whom the Petitioner quickly moved to disqualify, under 28 U.S. Code §§ 144 and 455; which allow litigants to disqualify a judge for bias, and guarantees "<u>A party may file only one such affidavit in any case</u>." But, Judge Chhabria would not step down; violating the Petitioner's due process rights, under 28 U.S. Code §§ 144, 455.**

Once Judge Orrick recused and was replaced by Judge Chhabria, the Petitioner immediately moved to disqualify Judge Chhabria, under 28 U.S. Code §§ 144 and 45, due to Chhabria's improper rulings in *Briggs v Universal* and *Briggs v Spacey*. The Petitioner's motion was timely filed, and proper in all respects. However Judge Chhabria would not recuse. In so doing, Judge Chhabria deliberately violated the Petitioner's rights under 28 U.S. Code §§ 144 and 455.

**28 U.S. Code § 144**. Bias or prejudice of judge
    Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, **such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.**
    The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. **A party may file only one such affidavit in any case.** It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

**28 U.S. Code § 455** states: "Any justice, judge, or magistrate judge of the United States **shall** <u>disqualify himself in any proceeding in which his impartiality might reasonably be questioned</u>."

The Petitioner's motion was timely filed, properly supported. The

Petitioner's 6 bases to disqualify Judge Chhabria were reasonable, clear and sound:

1. Judge Chhabria's dismissal Judgement/Order in Briggs v Spacey was so inappropriate, prejudiced and biased that Judge Chhabria filed the Order on SATURDAY, DECEMBER 22, 2018, THREE DAYS BEFORE CHRISTMAS, when no reporters would cover the story.
2. **Judge Chhabria abused his authority and refused to act on Plaintiff's eight (8) valid requests for default judgement against the defendants.**
3. Judge Chhabria arbitrarily and improperly opined that Plaintiff failed to state a claim, then grossly misstated and omitted Plaintiff's actual claims to make his improper ruling appear valid.
4. Judge Chhabria egregiously misapplied law, opined without bothering to learn basic technological precepts at issue, and **failed to apply the common "plain meaning" rule.** And all of these errors were made in favor of the defendants.
5. Judge Chhabria's Judgment in Briggs v Spacey showed extreme bias in favor of the defendants, as **the Judgment did not cite one of the defendants' 20 arguments in their 3 motions to dismiss. Worse, Judge Chhabria actually created one or morel arguments that the defendants did not raise** (Judge Chhabria's arguments were both wrong and improper).
6. When duly notified by the Plaintiff in the pleadings, Judge Chhabria failed to take action on any of the defendants documented false and fraudulent court filings, false and fraudulent business filings, or their improper business relationships

Each basis to disqualify Judge Chhabria complied with 28 USC §§ 144 and 455. Judge Chhabria's refusal to step down was a violation of the Plaintiff's rights, per 28 U.S. Code §§ 144 and 445, and shows a District culture of misconduct.

7. **As this matter moved to appeals, without asking or notifying the Petitioner, the District unlawfully REMOVED 25 OF THE PLAINTIFF'S FILINGS FROM THE PUBLIC DOCKET and did not restore them until the Plaintiff notified the 9th.**

Two months after this matter moved to the appellate court, the District/9th surreptitiously **removed 25 of the Petitioner's filings from the public district**

**docket**, without notifying the Petitioner. This was not discovered until 7 weeks <u>after</u> the Petitioner submitted his Opening to the 9th; leaving the Petitioner unable to publicly verify his claims; thus, forcing him to write both the district and the 9th, for an explanation—when he should have been researching for his Reply. The removal of these filings showed prejudice, violated the Petitioner's due process right to have his filings available for public inspection (*Nixon v. Warner Communications,* US, 1978), and undermined the integrity of the judicial process.

**8. The Judgment's improper mention and mischaracterization of each of the Petitioner's prior lawsuits, IN THE FIRST SENTENCE, is unprecedented, and has NEVER been done to a corporate plaintiff in 9th history. This shows prejudice, and a malicious intent to discredit the Petitioner, and subvert his right to a fair hearing. Further, this violates a central tenet of procedural due process, which requires *a decision based exclusively on the evidence presented.* Because the District Judgment introduced unrelated facts, and made a false statement of material fact in this introductory sentence, the Court engaged in misconduct, fraud on the court, and violated the Petitioner's due process.**

In the first sentence of its Judgment, the District wrote:

This is the latest in a series of lawsuits by pro se plaintiff Steve Wilson Briggs against Hollywood figures, alleging conspiracies relating to the theft of his screenplay, Butterfly Driver. See, e.g., Briggs v. Blomkamp, 70 F. Supp. 3d 1155 (N.D. Cal. 2014), affirmed as Briggs v. Sony Pictures Entertainment, Inc., 714 F. App'x 712 (9th Cir. 2018); Briggs v. Universal Pictures, et al., No. 3:17-cv-6552-VC (N.D. Cal. Apr. 25, 2017); and Briggs v. Spacey, et al., No. 3:18-cv4952-VC (N.D. Cal. Dec. 22, 2018).....

Copyright holders (particularly corporate copyright holders) are often required to protect their works dozens or hundreds of times. Thus, <u>mentioning the Petitioner's prior suits was a malicious effort to cast the Petitioner as a quack or a</u>

nuisance, and a clear abridgment of the Petitioner's right to a fair hearing. But it will not stanch the Petitioner's resolve to address every instance of infringement of his property. The District would never dream of doing this to a corporate plaintiff.

It is a tenet of *due process* that a fair hearing requires a decision based exclusively on the evidence presented (see Arg #9, p 20. By introducing the unrelated facts of the Petitioner's prior suits, the District violated the Petitioner's right to a decision based exclusively on the facts presented. Also, in introducing these prior suits, the District violated tenets of *Arnstein v Porter*, 1946 (2nd Cir), and *Southern Pacific Co. v. Bogert*, 1919 (US): "Succumbing to the temptation to consider other defeats suffered by a party may lead a court astray."

In this sentence, the District also stated all prior suits were "alleging *conspiracies* relating to the theft of his screenplay, Butterfly Driver." This is false. First, *Briggs v Spacey* (**BvS**) and *Briggs v Universal* (**BvU**) made no *theft* claims (these suits claimed Breach and Fraud against Spacey, for boasting that Trigger Street was available "around the world," when TriggerStreet's *Terms* said it was *solely for use in the USA*). Next, BvS was just a re-filing of BvU. Counts 9 and 10 (of BvS & BvU) made infringement claims, but not for "*theft*"; rather, for violating the Petitioner's right to *export*, per 17 USC § 602(a)(2). Last, in *BvB*, the Plaintiff made NO "conspiracy" claim (just one *Copyright Infringement* claim). In making these false statements, the District engaged in fraud on the Court and misconduct.

**9. THE JUDGMENT IS RIDDLED WITH CENTRAL FAILURES:**

**A. The Judgment's omission of the Petitioner's claims amounts to fraud on the court, and violates the due process principles of "a decision based exclusively on the evidence presented."**

**B. The District and 9th failed to do a basic plot comparison. The Plaintiff's plot was never mentioned, nor any fragment thereof. The failure to present the overarching plot claims was a abridgement of justice.**

**C. The petitioner made unique <u>original</u> idea/expression claims, demonstrating at least SIX of his idea/expressions were original, new expressions, never done before. The District made an inexcusable error by failing to acknowledge these claims.**

Cornell Law's *Legal Information Institute* (LII) explains the underlying principles of due process in it's "***procedural due proces*s**" entry, which includes Judge Henry Friendly's highly influential *list of procedures* that due process requires. This list of procedures includes "**a decision based entirely on the evidence presented**." Below is a screenshot of Judge Friendly's list, from Cornell Law's LII's entry for ***procedural due proces*s**:

> Judge Henry Friendly, in this article titled "Some Kind of Hearing," created a list of required procedures that due process requires. While this list is not mandatory, it remains highly influential, both in its content and relative priority of each item.
>
> 1. An unbiased tribunal.
> 2. Notice of the proposed action and the grounds asserted for it.
> 3. Opportunity to present reasons why the proposed action should not be taken.
> 4. The right to present evidence, including the right to call witnesses.
> 5. The right to know opposing evidence.
> 6. The right to cross-examine adverse witnesses.
> 7. A decision based exclusively on the evidence presented.
> 8. Opportunity to be represented by counsel.
> 9. Requirement that the tribunal prepare a record of the evidence presented.
> 10. Requirement that the tribunal prepare written findings of fact and reasons for its decision.

However, against the concept of a decision based entirely on the evidence, the District Judgment excludes all of the evidence, and wholly omits the Petitioner's

13,000 words of detailed infringement claims (supported by <u>evidence</u>: excerpts from the Petitioner's screenplay), then distorts the Petitioner's claims into a false, 4-word, perversion of fact. But accurately, the Petitioner's infringement claims were so overwhelming that his Appellate Brief included a comparison of much of the Petitioner's 13,000 words of infringement claims, against the 13 generic claims cited by the 9th in *Twentieth Century-Fox Film Corp. v. MCA, Inc.* (9th Cir, 1983)*,* the only film industry infringement case in which the 9th reversed, citing Twentieth Century-Fox's 13 tenuous claims, ostensibly as sufficient to reverse. This side-to-side comparison presented incontestable EVIDENCE that the Defendants infringed the Plaintiff's work. Yet, the Judgment omitted all evidence of the Petitioner's claims; thus, violating the Petitioner's right to a decision based exclusively <u>on the evidence presented</u>.

A very small fraction of the Petitioner's actual claims (including basic plot, characters, scenes and other complex and unique story structures), which were wholly omitted by the Judgment, follow:

### Basic PLOT of Butterfly Driver
Butterfly Driver is about the impossible lengths and desperate measures a poor former US soldier and patriot will take to save his daughter, with only one week to do it.
### Basic PLOT of Taken
Taken is about the impossible lengths and desperate measures that a poor former US soldier will take to save his daughter, with only 96 hours to do it.
### HERO
458. Plaintiff created a very unique hero (especially at the time, 2005).

Unlike the typical action adventure hero, who, at the time, were childless, had unlimited money, womanized, lived in expensive apartments or houses, and never seem to work; Arlo was the opposite: a devoted father, poor, working all the time, living below his family in a small sparsely decorated studio in a garage. Taken infringes on all of these unique attributes, and more:

| Butterfly Driver / Uberopolis | Taken |
|---|---|
| • Arlo Grainer is a **former** U.S. soldier & war hero. | • Brian Mills is a former U.S. military special forces hero; possibly ex-CIA. |
| • Arlo's age is 45. | • Brian appears 45-50. |
| • Arlo is a devoted father. | • Brian is a devoted father. |
| • Arlo is a poor man. | • Brian is a poor man. |
| • Arlo lives alone. | • Brian lives alone. |
| • Arlo is separated. | • Brian is divorced. |
| • Although separated, because Arlo is committed to his kids, he lives downstairs in a converted garage. | • Although divorced, because Brian is committed to his daughter, he lives nearby, in a small apartment. |
| • Although very masculine, Arlo does not have a girlfriend, as he is focused on his kids and being a good father. | • Although very masculine, Brian does not have a girlfriend, as he is focused on his daughter and being a good father. |
| • Arlo thinks clearly under pressure, is a great fighter, but avoids combat unless necessary. | • Brian thinks clearly under pressure, is a great fighter who fights whenever possible. |
| • Arlo has military connections that help him repeatedly (1. Dr. Laney Schuler treats Franny; 2. Arlo's military and ZR friends get him into Uberopolis). | • Brian has military connections that help him repeatedly (1. military connections gets Brian to Paris in a private jet; 2. said connections help find bad guys). |

**HERO LIVES NEAR HIS SEPARATED FAMILY**
**Butterfly Driver / Uberopolis**

463. The Plaintiff 's hero is separated from his wife, but lives nearby in a small converted studio, in one half of the downstairs garage.

**Taken**

464. Taken borrows this, in the first act, at a barbeque, Brian's friend asks of Brian's ex-wife, "Does she appreciate the fact that you've given up your life to be closer to her?"

**HERO USES HIS PHONE AND GPS TO OUTSMART & MISLEAD PURSUING STATE FORCES, AND USES A SECOND PHONE TO**

**MONITOR THEM**
**Butterfly Driver / Uberopolis**

465. When Arlo learns that State bounty hunters are in his zone looking for him, he races home to gather his family, but before leaving, Arlo booby-traps the house. Then, knowing that State bounty hunters are following the GPS (Global Positioning System) signal in his phone (omni-com), Arlo places his phone, with the video recorder "on," in the pocket of a jacket on a coat-rack, then places the coat-rack in front of a window in the house—so that in the silhouette of the streetlight, the coat-rack appears like a man hiding behind the window. Arlo flees with his family. A bit later, Arlo calls his phone from his wife's phone, and watches the video feed from his phone, and sees his booby trap kill the bounty hunters. [See Ex X4, pp 11-13].

**Taken**

466. Taken borrows Plaintiff's screenplay's exact structure.

467. Wary about a meeting with his old friend, Jean-Claude Pitrel, and knowing that when he calls Pitrel, the French special police will be able to track his position (using GPS), Brian places his phone on top a building near a park, with a walkie-talkie attached, then calls Pitrel from another roof-top. When Brian calls Pitrel, Pitrel's men descend on Brian's phone, only to find his phone connected to a walkie-talkie, and Brian gone, as Brian watches from afar.

• 468. Taken does not explain the impossibility of dialing a phone via walkie-talkie.

• 469. Taken does not comprehend that GPS is always on, not just during calls.

**HERO INFILTRATES BY DRESSING UP AND PRETENDING TO BE A COP**
**Butterfly Driver / Uberopolis**

470. On the satellite city Uberopolis, Arlo steals a police uniform from an unconscious police officer, then infiltrates Uberopolis' hospital by pretending to be a police officer.

**Taken**

471. Brian dresses in a police officer's uniform, and pretends to be a police officer, to infiltrate the lair of the bad gang (the "bad" Albanian immigrants).

**HERO TRICKS HIS OLD FRIEND (AN EXPERIENCED STATE INVESTIGATOR) TO BELIEVE THAT HIS GUN IS UNLOADED**
**Butterfly Driver / Uberopolis**

472. Jerry, Arlo's old friend from the military, now works for the

government as a special investigator, but hates his job. Midway through the story, Jerry agrees to apprehend Arlo. When Arlo and Jerry finally come into direct contact, Arlo pulls a gun on Jerry and order's Jerry to give him his gun. Jerry complies, then suddenly punches Arlo, and a fight ensues. The fight culminates with Jerry and Arlo mixing up their guns, and Jerry holding a gun on Arlo, and Arlo holding a gun on Jerry. Arlo gets the upperhand by informing Jerry that Jerry is holding Arlo's gun and it is not loaded , then points Jerry's gun at Jerry and instructs Jerry to give him the gun, and get in the back of the sky-car trunk. Jerry complies.

**Taken**

473. Jean-Claude Pitrel, Brian's old friend from the military, now works for the French government as a special investigator, but hates his job. Midway through the film, Pitrel agrees to apprehend Brian, to stop him from wreaking further havoc on Paris. When Pitrel gets home from work, he finds his wife has already allowed Brian into Pitrel's house. Pitrel excuses himself to the bathroom, where he gets his gun. When Pitrel returns to the table, he pulls his gun on Brian. Brian informs Pitrel that his gun is unloaded , and drops Pitrel's bullets on the table. (Brian craftily went to the bathroom, earlier, and unloaded Pitrel's gun.)

- 474. The film fails to explain why Pitrel was not carrying his loaded police issued gun, when he got home from work.

**PARANOID HERO**

**Butterfly Driver / Uberopolis**

475. Arlo is always on guard, from years of living in a war zone. When unexpectedly startled, he puts his gun in a peaceful guru's face. [See Ex X6, page 58.] The guru explains:

GURU

Surviving the war and fourteen years underground requires some healthy paranoia . But you're safe here.

476. Benni is very bothered that Arlo could put a gun in a peaceful Guru's face. As this dialogue progresses (Ex X4, page 60) Arlo explains that his fears keep him aware, saying:

ARLO

Fearless? I got fears. They keep me smart... on my toes.

**Taken**

477. Taken infringes on this same paranoid characteristic, as Brian drives his daughter Kim to the airport, they have the following exchange:

KIM

"Mom says your job makes you paranoid."

BRIAN

24

My job makes me aware.
**"THE STATE"**
**Butterfly Driver / Uberopolis**
697. In Plaintiff's screenplay, all characters refer to the new Unified World Government as " The State ". This is an idiosyncratic touch the Plaintiff used to create an authentic feel for his new business-centered world government.
498. Copyright expert William Patry explained in his 2009 book "Patry on Copyright," that one method to establish "striking similarity" is by finding if the plaintiff's work contains an unexpected or idiosyncratic element that is repeated in the alleged infringing work.
**Taken**
499. It will not surprise the Court that Taken also features this idiosyncratic element, as both Brian Mills and his friend/villain Jean-Claude Pitrel both refer to the Government as "The State". This is glaring infringement, because Brian lives in America and works for the US government, and Pitrel lives in France and works for the French government. This infringement can be seen in Taken, when Brian calls Pitrel's phone, as Pitrel sits in a park:
JEAN-CLAUDE PITREL
"You can't beat The State , Brian! You know that!"
BRIAN MILLS
"I'm not trying to beat The State ! I'm trying to save my daughter!"

The District's failure to name the Petitioner's actual claims violates the Ninth's requirement that plaintiffs identify the defendant(s) infringement. The Ninth recently affirmed this in *Johannsongs-Publishing, Ltd. v. Lovland* (Nov 29, 2021), as the 9th explained that a plaintiff "<u>must first identify the sources of the alleged similarity between the two subject works</u>.")

**10. The impropriety of this dismissal is proven by comparing the Judgment and Mem in *this* film infringement case, to the film infringement reversal opinion issued by the 9th in *<u>Zindel v. Fox Searchlight Pictures, Inc</u>* (2020) where, although the infringement claims did not show a fraction of the Petitioner's claims' originality, the 9th properly reversed**

**the dismissal, because dismissal is not highly favored in infringement cases. This Court will also notice, in *Zindel*, the 9th correctly cited *L.A. Printex* (as the Petitioner advised, herein); but *Printex* was ignored by the District. In *Zindel*, the 9th ignored the many cases that have been fully overruled by *Skidmore*—two of which (Rentmeester and Funky Films) form the improper basis of the Judgment. (Args 2 and 4, herein, explain why all prior *inverse ratio* cases are moot.)**

Roughly 16 months before the Ninth entered its improper Mem, herein, the

Ninth reversed ***Zindel v. Fox Searchlight Pictures, Inc*, 9th Cir (2020)**, a film

industry copyright case, where the Ninth correctly cited the prevailing *L.A. Printex*

*v Aeropostale* (2012), and used all other proper infringement methods. But, in this

matter, the District Judgment ignored *Printex* (and all correct methods). The key

passage from Zindel reads:

> While we cannot say that ruling as a matter of law at the pleading stage is never appropriate, we have long held that "[s]ummary judgment is 'not highly favored' on questions of substantial similarity." *L.A. Printex Indus*., *Inc. v. Aeropostale*, *Inc*., 676 F.3d 841, 848 (9th Cir. 2012).... Courts must be just as cautious before dismissing a case for lack of substantial similarity on a motion to dismiss. Dismissal is warranted **only** if, "<u>as a matter of law[,] the similarities between the two works are **only** in uncopyrightable material or are de minimis</u>." 3 William F. Patry, Patry on Copyright § 9:86.50 (2020)...
>
>   Here, the district court erred by dismissing the action because, at this stage, reasonable minds could differ on whether there is substantial similarity…

Further, we see how generous the Court was to Zindel, by examining Zindel's

actual claims (astonishingly simplistic, vague and generic), then comparing them

to the Petitioner's highly creative claims (involving a never-done-before over

arching plot, and many complex scenes, original expression, structures, etc). A

screenshot of the first few claims from Zindel's complaint follows:

43.    Set forth below are some of the more obvious similarities between the infringing Picture and the Play:

| **The Play** | **The Picture** |
|---|---|
| A. The story takes place during the 1960s (during the height of the Cold War). | The story takes place during the 1960s (during the height of the Cold War). |
| B. The genre is a blend of emotional human drama with fantasy and science fiction. | The genre is a blend of emotional human drama with fantasy and science fiction. |
| C. The mood is dreamy and oftentimes surreal, with fantasy sequences inside the main character's mind juxtaposed against real-world | The mood is dreamy and oftentimes surreal, with fantasy sequences inside the main character's mind juxtaposed |

## Zindel's Weak And General Claims

To compare Zindel's simple, dismissal-ready claims to the Petitioner's complex, detailed, meaningful claims, see pp 21-25, herein, where the Petitioner has included roughly one-third of his claims against the Defs' film "Taken."

The Ninth's ruling in *Zindel v. Fox Searchlight Pictures* demonstrates that well before the Petitioner submitted his *Oppositions to the Defs MTD*s to the District, and well before he submitted his Appeal to *this* Court (9th), the District and the 9th were very aware of prevailing law and methods. The District's and the 9th's refusal to use proper law and methods was clear misconduct, and a clear and malicious violation of the Petitioner's Constitutional right to due process.

27

**11. The 9th abridged the Petitioner's due process rights, by concluding it's Mem, "No further filings will be entertained in this closed case," because the Petitioner was entitled to one more filing (Per FRAP 35, 40).**

The final sentence of the Ninth's Memorandum reads: "**No further filings will be entertained in this closed case**." This was an overt and unConstitutional violation of the Petitioner's right to due process, because under FRAP 40 and 35 the Petitioner still had the right to file a Petition For A Panel Rehearing and/or a Petition For An En Banc Rehearing. The Ninth's unConstitutional effort to subverted the Petitioner's due process rights was malicious and deliberate.

**12. The Judgment violates and ignores the foundational copyright resource, *Corpus Juris Secundum* (C.J.S.), which the 9th supplanted with famously flawed case law, and various homemade authorities.**

The Judgment (p 2) states: "<u>**Many**</u>, if not all, of the asserted similarities between Butterfly Driver and Avatar or Taken are unprotectable elements…" But an open comparison would show all of the Petitioner's claims are valid; thus, the District used the phrase "<u>**Many**</u>, if not all," for a bit of *cover*. But this goes against the precept that *smaller infringement can be substantial*. In *Universal Pictures Co. v. Harold Lloyd Corporation* (9th Cir. 1947), the Ninth explained:

> "<u>The whole picture need not be copied to constitute infringement.</u> **<u>The mere copying of a major sequence is sufficient.</u>** In *National Institute Incorporated for Improvement of Memory v. Nutt*, D.C., 28 F.2d 132, 135, the court quoted from *West Publishing Co. v. Edward Thompson Co.* C.C., 169 F. 833, 854, as follows: "<u>To constitute an invasion of copyright it is not necessary that the whole of a work should be copied, nor even a large portion of it in form or substance, but that, **if so much is taken that the value of the original is sensibly diminished,**</u> or the labors of the original author are substantially,

**to an injurious extent, appropriated by another, that is sufficient…'" <u>…the unauthorized use, copy or appropriation is not to be neutralized on the plea that "`it is such a little one.'"</u>**

"…**Slight difference and variations will not serve as a defense.** In *Nutt v. National Institute Incorporated for the Improvement of Memor*y, 2 Cir., 31 F.2d 236, 238, the court said "Copying is not confined to a literal representation but includes various modes in which the matter of any publication may be adopted, imitated, or transferred with more or less colorable alteration.""

The Ninth's primary resource guide in *Universal Pictures v. Harold Lloyd Corp.* was the <u>C.J.S.</u> (**Corpus Juris Secundum**). In the 1970s, the Ninth moved away from the C.J.S. in infringement suits, in favor of *alternative sources* (namely Nimmer, and later William Patry; both tied to corporate litigants).[6] In *Universal v. Harold Lloyd Corp* the Ninth used the C.J.S. to explain that common aspects are "protectable," and a small infringement is still infringement (C.J.S., cited in **bold**):

"…**a new treatment of a common subject may be protected by copyright. Dramatization of existing works involves the independent exercise of intellectual powers, and hence the resulting product is copyrightable.**" And at page 217: "**A literal reproduction of the whole, or of substantially the whole, of a copyrighted work, if unauthorized, constitutes, an infringement, but an infringement is not confined to literal and exact repetition or reproduction; it includes also <u>the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy</u>… Copying and infringement may exist, although the work of the pirate is so cleverly done that no identity of language can be found in the two works. In such cases the question of infringement resolves itself into a question of fact on the evidence as to whether or not the copyrighted work was used and paraphrased in the production of the later work.**"."

---

[6] Melville and David Nimmer live/lived and practiced in the 9th, and own/owned a corporation (which seems to be a shell); William Patry, cited in *Zindel v Fox Searchlight* (2021), is Senior Copyright Counsel for Google—a Defendant herein.

**13. The Judgment and Memorandum are based on invalid law, improperly and surreptitiously introduced in 1982.**

As explained on page 10, herein, the District Judgment was largely based on *Funky Films* (which was overruled by Skidmore). But, perhaps more interestingly, the citation has no basis in law, the Ninth just slipped-it-in, in 1982; apparently to improperly supplant the C.J.S, to improperly reduce the focus of infringement claims against the California film industry. Page 2, para 3 of the Judgment reads:

> …The test focuses on **articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events** in the relevant works. Funky Films, Inc. v. Time Warner Entertainment Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006)…

But that central passage (in **bold**, above) has no basis in law. *Funky Films* (2006) cites this passage to *Kouf v Walt Disney* (1994); *Kouf* cites the passage to *Berkic v Crichton* (1985); *Berkic* cites the passage to *Litchfield v Spielberg* (1984); *Litchfield* cites the passage to *Jason v Fonda* (1982), BUT in *Jason v Fonda* the text is NOT in the Ninth's short Opinion, nor is any text of that nature. Rather, in *Jason*, the Court wrote: "We therefore incorporate his memorandum of decision by reference. Judge Kelleher aptly points out:" The Ninth then quoted a few sentences by Judge Kelleher; but did NOT included the central passage. The 9th slipped this passage into "law" by incorporating a flawed district memorandum.[7]

---

[7] The Plaintiff wishes to observe that Sonya Jason (of *Jason v Fonda*) was a gutsy pro se (self-represented) patriot, who relied on herself. It is heartbreaking that this Court initiated this "restricted story elements" scam by taking advantage of a pro se woman who trusted this Court to uphold the letter of the law. The Court did not.

## Closing Concerns

The Complaint's shows the Defendants (**Defs**) and their associates engaged in cyber crimes, business and internet fraud, published false documents, etc. This Court's failure to act sharpens a troubled picture. The Plaintiff's filings show that proximate to these unlawful acts, the Defs created many **shell** corporations. [8]Consistent with that, the Petitioner directs the Court's attention to a few facts:

1. In 1963, **Melville Nimmer** wrote "Nimmer on Copyright" (which would eventually, improperly supplant the CJS as 9th's leading copyright resource).

2. In 1977, Nimmer was repeatedly cited (over the C.J.S.) in S*id & Marty Krofft Tele. v. Mcdonald's Corp* (even as he acted as the plaintiff's expert).

3. In **1982** (3 years before he died), Nimmer created *Melville B. Nimmer, Professional Corp* (**MBNPC**), an apparent shell (today, MBNPC is directed by Melville's son, David, and claims David Nimmer's address as its HQ).

4. In 1982, in *Jason v Fonda*, the 9th improperly "incorporated by reference" a district court passage, which greatly reduced the scope of similarity testing; making it much easier for the film industry to prevail on infringement cases, and covertly robbing citizens in the Ninth of their copyrights.

5. In **1983**, the Ninth entered its *Twentieth Century-Fox v. MCA* opinion, in favor of Twentieth Century-Fox (with Melville Nimmer as their expert).

---

[8] The facts re corporations, on pp 31, 32, 33, were found on OpenCorporates.com, or the CA Sec of State's (or other US states' *sec of state*) *business search* web-app.

6. In 1984-85 Melville and David Nimmer invented and introduced a new, improper definition for *Striking Similarity*, which had no basis in law.[9]

The fact that Melville and David Nimmer created the MBNPC shell in 1982, just before Melville died, is disturbing, because 2 or 3 years later, <u>in 1984 or '85, the Ninth allowed the Nimmers to **invent** a brand NEW, **improper** definition of "striking similarity"</u>; a definition that would make it <u>impossible</u> to prove *substantial similarity*, unless a plaintiff could show "direct access" (e.g., a plaintiff giving his/her work to an infringer). Today, the Nimmers' new definition factors into almost all Ninth infringement cases, such as *Stewart v. Wachowski* (2006):

> ("`[S]triking similarity simply means that **in human experience it is virtually impossible that the two works could have been independently created**,'" quoting 3 Melville B. Nimmer David Nimmer, NIMMER ON COPYRIGHT, § 13.02[B], n. 20 (1985));

The district/9th improperly used this exact case, and this exact invented definition to dismiss the Plaintiff's film industry copyright infringement action, *Briggs v Blomkamp* (see p 16 of Judge Hamilton's order re MFSJ, Oct 3, 2014). But this definition has no place in law. Nimmer just invented it, and the Ninth ran with it. This is not how US law is established. Before this, the true definition and guideline of *striking similarity* was established in *Arnstein v Porter* (1946):

"If evidence of access is absent, the **<u>similarities</u> must be so <u>striking</u> as**

---

[9] It is interesting that in 1985 US regulators finally allowed commercial ISPs (internet service providers). Thus, the Nimmmer's new definition would soon protect film and tech industry *hackers*, by only allowing "direct access" claims.

**to preclude the possibility that plaintiff and defendant independently arrived at the same result."**

Like the Nimmers, Ninth Circuit *Chief Judge* Sidney Thomas owned two shells. Three US Supreme Court justices (including John G Roberts Jr) who supported the controversial 2009 *Ashcroft v Iqbal* ruling, appear to have owned shells. (*Iqbal* has been used to dismissed tens of thousands of copyright cases in the past 12 years.) Ninth Circuit Chief Judge James Browning may have participated in creating shell corporations, in 1976 (Alaska) and 1981 (Nevada).[10]

The Petitioner believes, in *Jason v Fonda*, a few bad actors in the Ninth improperly incorporated by reference the district court memorandum, to restrict the focus of similarity testing to just a few elements (and weak elements at that): plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.[11]

Before the Ninth began to improperly omit the C.J.S. from copyright cases, the C.J.S. had a broad directive on where to find similarity in literary infringement:

"Infringement of copyright of a purely literary work consists of plagiarism, which may take at least three forms: Plagiarism of **language**, of **incident** or of **plot**,…"

Prior to the Ninth and the Nimmers improperly omitting C.J.S. from copyright rulings, many prior US Supreme Court and 9th Circuit cases established

---

[10] If this is correct, this is far beyond corruption; this wouuld be systemic evil.
[11] Hollywood wanted to limit testing to a few story elements; *except sequence of events*, which they wanted applied to the entire script. But the C.J.S. ignored sequence, and emphasized *incidents*. Regardless, *Universal v. H Lloyd Corp* (1947, 9th), established that *sequence* meant any short sequence within a single scene.

that analyzing ANY story element was relevant to showing substantial similarity, and many cases did not bother to name story elements, taking a holistic approach.

- In *Kalem Co. V. Harper Bros* (1911), the Supreme Court simply wrote:

    "The defendant employed a man to read Ben Hur and to write out such a description or scenario of certain portions that it could be followed in action; these portions giving enough of the story to be identified with ease."

- In *Twentieth Century-Fox Film Corp v. Stonesifer* (9th Cir., 1944), the Ninth added to the assessment list: plot, characters (primary, secondary, peripheral) locale (time period), action, dialogue, scene, acts (major story sections), story events, attire and wardrobe, setting (hotel room, apartment, reception room, lobby), vicinity, opening, conclusion, props and set decorations (e.g., maps, "the arrangement of the bedrooms is strikingly similar").

- In *Universal Pictures v. Harold Lloyd Corp* (1947, 9th), the Ninth assessed scenes, plot, characters, characterization, motivation, structure, action, *sequence of action*, incidents, gags, and (1) noted "similarities between the motion picture and plaintiff's literary work run <u>throughout</u> the story," and (2) noted any *sequence* requirement were met by a mere sequence <u>within a **single** scene</u>: "The sequence, as already illustrated, fulfills this requirement, as found by the trial judge."

- *Benny v. Loew's Incorporated* (9th Cir., 1956), the Ninth focused on such elements as: locale and period (time period), setting, characters, the story points, the development of the story, incidents, sequences, suspense, points of suspense,

34

climax, dialogue, motive, character objective, method of achieving his objective, climax, plot, scene, machinations. And similar to the Petitioner (who noted that without his elements, the Defendants have nothing left to market), the Court noted: "<u>If the material taken by appellants from "Gas Light" is eliminated, there are left only a few gags, and some disconnected and incoherent dialogue</u>."

Finally, in *Skidmore v Led Zeppelin*, the Ninth solved several decades-old problems in its copyright system. But *Skidmore* also created a new *trick* to deny claims (similar to the prior *trick*): requiring plaintiff's proffer complex *selection and arrangement* theories, which will never satisfy the Ninth's "secret" standard. The Ninth's bias for corporations is seen in its concession of extrinsic testing, its accurate statement of claims, and its relaxation of *selection and arrangeme*nt requirements and its omission of *dissection*—<u>for corporate plaintiffs</u> (see *Twentieth Century-Fox v. MCA*, as the cites 13 of 20th Century-Fox's simple and generic selection claims, as sufficient to reverse, and abandons dissection). These biases and improper practices subvert justice and democracy.

## CONCLUSION

For the foregoing reasons, the Appellant-Plaintiff-Petitioner's motion to recall the mandate should be granted.

Dated: December 31, 2021.                      /s/ Steve Wilson Briggs
                                                                Steve Wilson Briggs
                                                Plaintiff/Petitioner, In Propria Persona

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF-APPELLANT'S MOTION TO RECALL MANDATE** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 6, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 31, 2021          /s/ Steve Wilson Briggs